379 F.2d 850
 BOATEL, INC. and P. J. Donovan, Deputy Commissioner, Seventh
Compensation District, Bureau of Employees'
Compensation, United States Depart ment
of Labor, Appellants,
v.
Emile R. DELAMORE, Appellee.
 No. 21459.
 United States Court of Appeals Fifth Circuit.
 June 21, 1967.
 
 George B. Matthews, New Orleans, La., Sherman L. Cohn, David L. Rose, Edward R. Berlin, Attys., Dept. of Justice, John W. Douglas, Asst. Atty. Gen., Washington, D.C., Louis C. LaCour, U.S. Atty., New Orleans, La., Thomas W. Thorne, Jr., New Orleans, La., Lemle & Kelleher, New Orleans, La., of counsel, for appellants.
 Samuel C. Gainsburgh, Jack C. Benjamin, Howard W. Lenfant, Kierr & Gainsburgh, New Orleans, La., for appellee.
 Before GEWIN and AINSWORTH, Circuit Judges, and HUNTER, District judge.
 AINSWORTH, Circuit Judge:
 
 
 1
 Two questions are presented for decision: First, whether the remedy of the amphilbious worker injured on drilling craft in the Gulf of Mexico off the coast of Louisiana engaged in the exploration and development of oil and gas in the Submerged Lands Area, against his employer, is exclusively under the Longshoremen's and Harbor Workers' Compensation Act[1] (as extended by the Outer Continental Shelf Lands Act),[2] whose coverage expressly excludes a 'member of the crew' of a vessel, or is under the Jones Act[3] as a seaman. The second, a collateral question, is: Whether the injured worker, having accepted voluntary compensation payments under the Longshoremen's Act, and having filed a formal claim for continuing benefits which was denied by the Deputy Commissioner, is thereby estopped from asserting a seaman's Jones Act claim for damages.
 
 
 2
 Emile R. Delamore, appellee, sustained disabling injuries while employed by General Marine Corporation (now Boatel, Inc.) as a diesel operator or motorman working aboard the drilling tender, the JOSEPH ZEPPA. He was paid compensation voluntarily by his employer under the Longshoremen's Act. When the employer subsequently terminated compensation, Delamore, through counsel, filed a formal claim for continuing compensation under the Act with the Deputy Commissioner, United States Department of Labor. During the pendency of the claim Delamore conferred informally with the Deputy Commissioner who asked him if he was aware of the Jones Act remedy, and claimant replied that he had heard of it but did not know its meaning. He was further asked by the Commissioner whether he had discussed the Jones Act with his attorney and he said that he had not. The Commissioner then noted in his records of the case that he saw no reason to raise the Jones Act issue 'as long as neither of the parties raise it.'
 
 
 3
 A hearing was held by the Commissioner and additional Longshoremen's compensation denied. Thereafter, claimant attacked the Deputy Commissioner's award on the ground that he was 'a member of the crew' of the JOSEPH ZEPPA and accordingly that the Deputy Commissioner had no jurisdiction of the case since both the Longshoremen's Act and the Outer Continental Shelf Lands Act provide that coverage excludes 'a master or member of a crew of any vessel.'[4] His contention was rejected by the Deputy Commissioner. Claimant then petitioned the district court to review the Deputy Commissioner's ruling that he had jurisdiction under the Longshoremen's Act. The district Court remanded the case to the Deputy Commissioner to take evidence on the question whether claimant was 'a member of the crew' of a vessel, and after an evidentiary hearing the Deputy Commissioner again held that claimant was not 'a member of the crew' of a vessel and that the longshoremen's Act applied. In his written findings the Deputy Commissioner said that all of claimant's duties 'were solely in connection with the drilling operations.' Claimant again petitioned the district court for review of the Deputy Commissioner's findings. The district judge set aside the Deputy Commissioner's order and remanded the matter with instructions to render an order that Delamore was not entitled to the benefit of the Longshoremen's Act as extended by the Outer Continental Shelf Lands Act. The trial judge said that the finding of the Deputy Commissioner that claimant was not a member of a crew was 'completely incomprehensible.'[5] Both the Deputy Commissioner and claimant's employer, who intervened in the case, have appealed. Following the ruling by the district court, claimant then filed a separate Jones Act seaman's suit against the employer.
 
 
 4
 Delamore performed all of his services aboard the vessel, the JOSEPH ZEPPA, a non-self-propelled drilling tender officially registered and inspected by the United States Coast Guard, which had been towed to the stationary drilling platform in the navigable waters of the Gulf of Mexico on the Outer Continental Shelf about ten miles from the Loisiana coast, and moored there afloat for a considerable time-- more than a year-- while drilling operations were being performed. There were two diesel engines on the JOSEPH ZEPPA which furnished power chiefly used in the drilling operations on the fixed platform and also power for light, water and cooking aboard the vessel. The vessel was annually the subject of a load line inspection and report by the American Bureau of Shipping. Delamore was assigned to work on the tender, not to work on the fixed platform. His primary duties were the care and maintenance of the diesel engines, generators, gauges, equipment and the engine room itself. He looked after the machinery and kept 'everything running.' He held United States Merchant Marine seaman's papers, issued by the Coast Guard, as an ordinary seaman. His work schedule was twelve hours a day for ten days aboard the vessel and then he had five days off duty on shore. Pay was at an hourly rate. He ate and slept aboard the ZEPPA, as did all of the other members of the crew as well as those employed on the fixed platform. He was considered by his employer as part of the crew of the ZEPPA, as an ablebodied seaman and part of the engine and deck department. The vessel also had others who were considered part of the crew, such as a master, relief master, three able-bodied seamen, a chief engineer, a relief engineer, an electrician, a wiper and two other diesel operators.
 
 
 5
 The Deputy Commissioner argues two grounds for reversal of the district court's holding as follows: (1) A claimant who deliberately accepts compensation benefits under the Longshoremen's Act and invokes its jurisdiction by filing a formal claim may not contend that the Act is inapplicable after the Deputy Commissioner's rejection of his claim for additional compensation, and (2) the Deputy Commissioner's finding that the claimant was not a 'member of a crew of any vessel' is supported by substantial evidence of record.
 
 I.
 
 6
 We consider, first, the Deputy Commissioner's contention that Delamore is estopped to contend that the Longshoremen's Act is inapplicable after having accepted voluntary compensation benefits and having invoked the jurisdiction of the Act by filing a formal claim for continuing compensation which was rejected by the Commissioner. The Deputy Commissioner argues that claimant may not abruptly 'about face' after his claim for further compensation benefits has been rejected and then contend 'for the first time' that he was employed as a 'member of the crew' of a vessel and therefore not covered by the Longshoremen's Act but by the Jones Act. As the Deputy Commissioner states the argument in his brief, 'He thus hopes to secure a second opportunity, this time in a suit under the Jones Act, to obtain a favorable ruling on his contention that as a result of the injuries suffered he was disabled.' The Deputy Commissioner contends that whether claimant was a member of a crew of a vessel so as to bar recovery under the Longshoremen's Act is a factual question, not jurisdictional, and must be treated in the same manner as the question of whether claimant was injured while acting within the scope of his employment, that there is substantial evidence in the record to support the Commissioner's finding, which the courts must affirm, whether we agree with the factual conclusion or not.
 
 
 7
 There is nothing sinister about a worker who claims to be physically disabled from injuries incurred during his employment, attempting either personally or through counsel, to obtain recovery by whatever lawful remedy or remedies are available to him. The circumstances here do not warrant a finding of collateral estoppel against the injured employee. They show that claimant's employer voluntarily made compensation payments under the Act for a period of time, on the cessation of which claimant filed a formal claim, through counsel, for additional benefits and for a hearing. At the hearing the issue of whether the Longshoremen's Act properly covered this employee was not raised by the parties nor was evidence taken on this subject, though it was in the mind of the Deputy Commissioner since he had informally discussed it with claimant a month prior to the hearing but did not pursue the matter further because neither party had raised the issue. Having rejected claimant's request for additional compensation in written findings, that the employee was not longer disabled to work, the Deputy Commissioner denied, out of hand and without opinion, claimant's subsequent petition, through counsel, to have the compensation order annulled and set aside on the ground that claimant was a member of the crew of a vessel and thus the Commissioner lacked jurisdiction to render the compensation order.
 
 
 8
 It was not until Judge Christenberry reviewed the Deputy Commissioner's action and ordered a remand of the case for a hearing on the vital question of 'status' as to whether claimant was a member of the crew of the vessel that the Deputy Commissioner 'for the first time' entertained the issue of coverage itself under the Longshoremen's Act and took evidence in a two-day hearing concerning the type of employment in which claimant was engaged with a view of determining whether he was a crew member or not. The Deputy Commissioner then found that claimant 'was not a member of a crew of the vessel' but was included under the coverage of the Longshoremen's Act. It was this holding that Judge Chiristenberry, on the second review of the Deputy Commissioner's findings, reversed and set aside, remanding the matter to the Deputy Commissioner with instructions to render an order adjudicating that complaint was not entitled to the benefit of the Longshoremen's Act, thus clearing the way for the Jones Act seaman's suit.
 
 
 9
 In Bretsky v. Lehigh Valley R.R. Co., 2 Cir., 1946, 156 F.2d 594, the Second Circuit held that an injured railroad worker who had accepted voluntary Pennsylvania workmen's compensation but declined to accept payment after the Pennsylvania Board's award was made was not barred by plea of res judicata from suing for FELA benefits though the Pennsylvania Board's award had not been appealed from by him within the statutory period. The Court in making the ruling observed that the Board's Referee had 'made no express finding of fact on the issue of jurisdiction over the subject matter.'
 
 
 10
 In Mike Hooks, Inc. v. Pena, 5 Cir., 1963, 313 F.2d 696, we denied pleas of res judicata and estoppel against a seaman's suit under the Jones Act where the injured employee had been granted a Texas compensation award by the Texas Board, which award was not appealed from within the statutory period. The Texas Act excluded coverage to seamen and the Board's stereotyped findings were that the employee was not a seaman. However, this Circuit found that there had been no real contest over this issue and the question had not really been litigated before the Taxas Board. The issue of jurisdiction not having actually been brought into question in the proceeding, there was no prohibition against collateral attack of the Board's decision. We cited in support thereof Hoffman v. New York, N.H. & H.R. Co., 2 Cir., 1934, 74 F.2d 227, cert. den. 294 U.S. 715, 55 S.Ct. 513, 79 L.Ed. 1248 (1935), and Bretsky v. Lehigh Valley R.R. Co., 2 Cir., 1946, 156 F.2d 594. Out holding in Mike Hooks, Inc., supra, is opposed, therefore, to Landreth v. Wabash R. Co., 7 Cir., 1946, 153 F.2d 98, cited by the Deputy Commissioner in a footnote.[6]
 
 
 11
 We held in Teichman v. Loffland Brothers Company, 5 Cir., 1961, 294 F.2d 175, that an injured employee who had brought a prior unsuccessful suit against his employer under the Jones Act as a seaman was not thereby estopped from obtaining an award under the Longshoremen's Act as a result of a second accident under the same employer. We said in Teichman that 'It has been consistently held both in the Supreme Court and in the circuit courts that an unsuccessful action in a Jones Act case is not inconsistent with and does not prevent a subsequent act for compensation.'[7] In principle, there is no reason why the converse of this proposition should not also apply. The Congressional policy against the Deputy Commissioner acting beyond the scope of coverage of the Longshoremen's Act is clearly indicated in unmistakable terms in the Act itself by the specific exemption in the Longshoremen's Act of the master and member of the crew of a vessel, and by the repetition of this exclusion from coverage in the Outer Continental Shelf Lands Act. When the Longshoremen's Act was first enacted, the legislative history indicates that the effort to bring the master and members of the crew of a vessel under the Act was successfully opposed by representatives of maritime employees. See Norton v. Warner Co., 321 U.S. 565, 64 S.Ct. 747, 88 L.Ed. 931 (1944). In Norton the maritime unions appeared as amicus curiae to emphasize the importance of that exception. The maritime unions maintained that the maritime law, the Jones Act and the right to maintenance and cure and other rights in admiralty, such as the right to bring a suit for injuries caused by unseaworthiness of a vessel, constitute remedies that 'are indeed superior to the relief afforded by the Longshoremen's and Harbor Workers' Act.' The Supreme Court said that it should not determine whether these remedies are more desirable than a system of compensation but that these basic admiralty rights should not be withheld from a class or classes of maritime employees, and that it was its duty not to permit the exemption to be narrowed by administrative construction or otherwise (321 U.S. at 571, 64 S.Ct. at 751).
 
 
 12
 We find, therefore, that neither the facts nor the law supports a finding of collateral estoppel against appellee.
 
 II.
 
 13
 The Deputy Commissioner in supplemental findings after holding a hearing on the issue of the employment status of claimant, as required by the district's judge's remand of this case, detailed findings of fact which are substantially in accord with our own statement of the facts. However, he concluded that Delamore was an employee under the Longshoremen's Act and 'was not a member of the crew of a vessel.' The Deputy Commissioner does not indicate why he reached this conclusion, but in searching for a clue, we note that in describing claimant's duties aboard the JOSEPH ZEPPA, and Deputy Commissioner found 'that all such duties were solely in connection with the drilling operations.' Additionally, in his brief, he urges that 'as a diesel operator the claimant performed no duties pertaining to navigation.' There is no dispute about the facts of claimant's employment. He was more or less permanently assigned to the JOSEPH ZEPPA and performed all of his duties aboard that craft. The JOSEPH ZEPPA was a floating drilling tender, officially registered by the United States Coast Guard, then upon the navigable waters of the Gulf of Mexico, was a vessel inspected by the United States Coast Guard, and the subject of a Report of Annual Loadline Inspection by the American Bureau of Shipping. It was moored to a stationary drilling platform in the Gulf on the Outer Continental Shelf and its mission was to assist in the drilling of a well exploring for oil and gas by supplying the power for the drilling rig. It was also the place for all of the employees, both those assigned to the tender, including claimant, and those assigned to the drilling platform, to sleep and eat. It is, of course, true that if the Deputy Commissioner's findings of fact are supported by substantial evidence they should be affirmed because the scope of judicial review in such cases is limited. See O'keeffe v. Smith, Hinchman & Grylls Assocs., Inc., 380 U.S. 359, 85 S.Ct. 1012, 13 L.Ed.2d 895 (1965). But it is not so when the Deputy Commissioner applies impermissible legal standards upon which to judge whether an employee was 'a member of a crew of vessel.' We conclude under the facts here that his findings were clearly wrong as a matter of law. Findings of the Deputy Commissioner may be set aside for error of law. Norton v. Warner Co., 321 U.S. 565, 64 S.Ct. 747, 88 L.Ed. 931 (1944).
 
 
 14
 The legal principles which the Deputy Commissioner should have applied for determination of this issue had their origin in the Supreme Court's holding in Gianfala v. Texas Company, 350 U.S. 879, 76 S.Ct. 141, 100 L.Ed. 775 (1955), the first major decision in a Jones Act suit relative to the status of the maritime oil field worker employed on drilling craft in the Gulf of Mexico. There the Supreme Court reversed this Circuit's holding and reinstated that of the district judge who had denied a defense motion for a directed verdict on the ground that the injured worker was not a seaman and member of the crew of a vessel-- therefore not within the purview of the Jones Act-- and the jury had thereafter found for the plaintiff.
 
 
 15
 Then came our landmark decision in 1959 in Offshore Company v. Robison, 5 Cir., 1959, 266 F.2d 769, where Judge Wisdom in a very thorough opinion on the question of status of these maritime workers held for the Court that the Jones Act 'has always been construed liberally, but recent decisions have expanded the coverage of the Jones Act to include almost any workman sustaining almost any injury while employed on almost any structure that once floated or is capable of floating on navigable waters.' (Id. at 771.) This was a farreaching decision obviously foreshadowed by Gianfala and by the rapid development of the tidelands oil fields of the Gulf of Mexico off the Louisiana coast. In 1953, Congress had extended the Longshoremen's Act by the passage of the Outer Continental Shelf Lands Act which extended coverage to workers injured on the seabed of the Outer Continental Shelf but had again, as in the Longshoremen's Act, excluded 'a master or member of a crew of any vessel.' In Robison, Judge Wisdom quoted from Carumbo v. Cape Cod S.S. Co., 1 Cir., 1941, 123 F.2d 991, where the Court stated that 'The process of liberal construction of the Jones Act cannot now be ignored because Congress has seen fit to pass the Longshoremen's Act. As a result of the cases, we feel constrained to hold that one who does any sort of work aboard a ship in navigation is a 'seaman' within the meaning of the Jones Act.' The Court in Robison also cited with approval Gahagan Const. Corporation v. Armao, 1 Cir., 1948, 165 F.2d 301, involving the claim of a deckhand on a dredge pumping silt in Boston Harbor. In Gahagan, the First Circuit approved the trial judge's holding that in order to be a 'seaman,' 'there must be a connection with a vessel, and that the person must play some part in connection with the labor about the operation and welfare of the vessel while in navigable waters' and found that 'crew includes all those who contribute to the labors about the operation and welfare of the ship' but 'each case presents different situation' and 'no single factor is controlling.' (165 F.2d at 305.) The Court in Robison said that there were two common denominators in prior decisions: first, that 'the claimants are not ordinarily thought of as 'seamen' aboard 'primarily in aid of navigation', although they may serve the vessel in the sense that the work they perform fits in with the function the vessel serves' and, second, that 'the 'vessels' were not conventional vessels but special-purpose structures that in one case was on the bottom of the sea. In other words, under the Jones Act a vessel may mean something more than a means of transport on water.' (Id. at 776.) Judge Wisdom concluded that as to the test that the worker should be 'aboard primarily to aid in navigation,' his 'review of the cases shows this test has been watered down until the words have lost their natural meaning' and said that 'There is nothing in the (Jones) act to indicate that Congress intended the law to apply only to conventional members of a ship's company.' (Id. at 780.) Judge Wisdom wrote that '* * * there is an evidentiary basis for a Jones Act case to go to the jury: (1) if there is evidence that the injured workman was assigned permanently to a vessel (including special purpose structures not usually employed as a means of transport by water but designed to float on water) or performed a substantial part of his work on the vessel; and (2) if the capacity in which he was employed or the duties which he performed contributed to the function of the vessel or to the accomplishment of its mission, or to the operation or welfare of the vessel in terms of its maintenance during its movement or during anchorage for its future trips.' (Id. at 779.)
 
 
 16
 More recently, in Producers Drilling Company v. Gray, 5 Cir., 1966, 361 F.2d 432, in a complete and detailed opinion, Judge Thornberry considered all of the cases of this Circuit since Robison on the issue of the employment status of such maritime workers, and his opinion affirmed the ruling of the trial court which had directed a verdict for plaintiff, a worker on a submersible drilling barge, that he was a seaman as a matter of law and entitled to sue under the Jones Act. Thus it was held that a directed verdict was proper on the question of status if reasonable men could not draw conflicting inferences which might lead to a different conclusion, and that since there was no evidence that the vessel was not being used for its designed purpose or that the seaman was not permanently attached to the vessel and performing duties which contributed to the accomplishment of its mission, a directed verdict under the circumstances on the issue of status was proper.
 
 
 17
 The Deputy Commissioner's conclusion that the JOSEPH ZEPPA was primarily being employed to assist in drilling operations and that all of claimant's duties were solely in connection with the drilling operations is of no moment under the circumstances here. Delamore was primarily engaged in performing duties aboard the vessel in fulfilling the function for which the vessel was designed. By his work in the engine room as a diesel motorman, he contributed to the mission of the vessel which was to cooperate in the drilling operations. In this regard, therefore, he was primarily aiding in navigation of the vessel whose purpose was the drilling of an oil well.
 
 
 18
 Boatel, Inc., intervenor-appellant, makes the additional argument that the district judge believed that claimant was a seaman as a matter of law and, therefore, per se, a member of the crew of the vessel and excluded from coverage under the Longshoremen's Act. Intervenor attempts to give the term 'member of a crew' a narrow meaning by an inquiry into the 'principal duty' of the employee. We are urged to consider that certain maritime employees may be seamen, but when the 'principal duty' test is applied to them, they are not 'members of the crew of a vessel,' and thus are not excluded from Longshoremen's Act coverage.
 
 
 19
 The district judge found that the Deputy Commissioner's ruling that claimant was not a member of a crew was 'completely incomprehensible.' He said that the evidence not only did not establish that claimant was not a member of a crew, it clearly established that he was a member of a crew. Later, during oral argument, the district judge said that the claimant was 'definitely a seaman.' Thus the district court used the terms 'member of a crew' and 'seaman' interchangeably. Intervenor argues that the term 'seaman' is a broader term than 'member of the crew of a vessel' and that the district judge mistakenly felt that since claimant was a seaman he was also a member of the crew and excluded from Longshoremen's Act coverage. We have said, however, that 'Attempts to fix unvarying meanings (that) have a firm legal significance to such terms as 'seaman,' 'vessel', 'member of a crew' must come to grief on the facts.' Offshore Company v. Robison, 5 Cir., 1959, 266 F.2d 769, at 779.
 
 
 20
 In Offshore Company v. Robison, supra, the terms 'seaman' and 'member of the crew' are used interchangeably. We gave approval to the written interrogatories propounded by the district judge to the jury in that case where the question submitted was whether Robison was a 'member of the crew' of the vessel involved,[8] and we quoted also from Carumbo v. Cape Cod S.S. Co., 1 Cir., 1941, 123 F.2d 991, to the effect that even a cook or an engineer is aiding in navigation, and that the courts have given an extremely liberal interpretation to the terms 'seaman' and 'member of a crew of any vessel.' (266 F.2d 769, at 774.)
 
 
 21
 In the context used in this and similar cases involving the maritime amphibious worker on drilling craft offshore in the Gulf of Mexico, the difference between the two terms 'seaman' and 'member of the crew of any vessel' is so slight as to be virtually indiscernible and, for all practical purposes, may be disregarded. The inquiry, therefore, is whether in determining if claimant was 'a member of the crew of any vessel,' the Deputy Commissioner applied proper legal standards to undisputed facts relating to Delamore's status.
 
 
 22
 The decisions of this Court and the Supreme Courts, in suits under the Jones Act which have decided whether or not a claimant is under the coverage of that Act, are directly applicable here in determining the meaning of the term 'member of the crew' for purposes of exclusion under the Longshoremen's Act. Though the Deputy Commissioner found the facts correctly, his conclusion that claimant was not a member of the crew of a vessel and therefore that he was not excluded from Longshoremen's Act coverage is erroneous as a matter of law and cannot be sustained. It is too late now to turn back the clock, for the principles upon which our decision is based have gradually evolved, and beginning with Gianfala, then Robison, and now Producers Drilling Company v. Gray, they are quite clear and should be well understood.
 
 
 23
 Affirmed.
 
 
 
 [1]
 33 U.S.C.A 901 et seq
 
 
 [2]
 43 U.S.C. 1331 et seq
 
 
 [3]
 46 U.S.C. 688. The Jones Act provides that a seaman (the term is undefined) negligently injured in the course of his employment can maintain an action for damages at law against his employer, with right of trial by jury
 
 
 [4]
 See 33 U.S.C. 903(a)(1); 43 U.S.C. 1333(c)(1)
 
 
 [5]
 The court's comments read as follows:
 'Well, how it is that the Commissioner could find that the man was not a member of a crew is completely incomprehensible. The evidence not only does not establish that he was not a member of a crew, I think it clearly establishes that he was a member of a crew of a vessel. I think the Commissioner just had to ignore the fact that he had to be.'
 
 
 [6]
 The Deputy Commissioner also cites three cases to the effect that once a party has invoked the power of an administrative agency or court, he is estopped after an adverse decision on the merits to deny that power. We find none of these cases of aid to us since they are clearly inapposite on the facts. Callanan Road Improvement Co. v. United States, 345 U.S. 507, 73 S.Ct. 803, 97 L.Ed. 1206 (1953), involved a party who had invoked the power of the ICC to approve the transfer of an amended certificate of public convenience a necessity and then collaterally attempted to reopen prior Commission proceedings which had placed certain limitations on the certificate. The Court held that he was estopped to deny the Commission's power to issue certificate in its present form. Admiral Towing Company v. Woolen, 9 Cir., 1961, 290 F.2d 641, involved a litigant who had invoked the limitation of liability growing out of the disappearance at sea of a tugboat. Upon the Court denying the petition, he claimed just the opposite on appeal, that he was not within the limitation of liability status, and the Court accordingly held he was estopped
 Commissioner of Internal Rev. v. National Lead Co., 2 Cir., 1956, 230 F.2d 161, involved a taxpayer who waited ten years before attacking the WPB's determination of necessity in connection with the issuance of a certificate that certain facilities were necessary in the national defense. The Court held that having accepted the certificate the taxpayer was bound by its limitation and could not at this late hour contest it.
 Obviously none of these cases is similar, on the facts, to the present case and it would take a strained construction to apply legal principles therein to the present controversy.
 The Deputy Commissioner also cites Hagens v. United Fruit Co., 2 Cir., 1943, 135 F.2d 842, which involved a claimant who had brought suit under the Jones Act for injuries sustained in defendant's employ. But the Deputy Commissioner had previously taken jurisdiction of his claim and made an award of compensation to him under the Longshoremen's Act. The Court held that the award could not be collaterally attacked and rejected plaintiff's contention that the Deputy Commissioner had not made explicit findings that plaintiff was not a member of the crew but had merely found that he was injured 'while performing service as a member of the shore staff for the employer and engaged in shifting the S.S. 'Mayari' from drydock.' Though not directly in point, this case lends some support to the Deputy Commissioner's position, but we are not in accord with it in principle.
 As to the Deputy Commissioner's citation of South Chicago Coal & Dock Co. v. Bassett, 309 U.S. 251, 60 S.Ct. 544, 84 L.Ed. 732 (1940), see the later decision of Senko v. LaCrosse Dredging Corporation, 352 U.S. 370, 77 S.Ct. 415, 1 L.Ed.2d 404 (1957), which clarifies that holding and cites Gianfala v. Texas Company, 350 U.S. 879, 76 S.Ct. 141, 100 L.Ed. 775 (1955).
 
 
 [7]
 Cf. Robertson v. Donovan, E.D.La., 1963, 219 F.Supp. 364; Smith v. Service Contracting, Inc., E.D.La., 1964, 236 F.Supp. 492
 
 
 [8]
 The questions submitted to the jury are set forth in footnote 4 (266 F.2d 769, at 773). The first two thereof read as follows:
 '(1) Was 'Offshore No. 55' a vessel? '(2) If so, was Robison a member of the Crew of that vessel?'