**NOBLE DRILLING CORPORATION,
Appellant,**

v.

**Clyde J. SMITH, Appellee.**

**No. 25798.**

United States Court of Appeals
Fifth Circuit.

June 2, 1969.

Rehearing Denied July 7, 1969.

---

See also D.C., 272 F.Supp. 321.

George V. Baus, Adams & Reese, New Orleans, La., for appellant.

Harold J. Lamy, Dodd, Hirsch, Barker & Meunier, New Orleans, La., for appellee.

Before WISDOM, THORNBERRY and GOLDBERG, Circuit Judges.

GOLDBERG, Circuit Judge:

Science having sent the drilling for oil and gas out to sea, problems have arisen regarding the liability to amphibious workmen injured while performing duties relating to offshore drilling operations. The injured worker here was a mud pumper who was injured on an offshore drilling platform but who spent most of his working time aboard a tender servicing the platform. The question is whether this worker was a "seaman" or a "member of the crew" of a vessel within the contemplation of the Jones Act.[1] We hold that Clyde J.

---

1. The Jones Act, 46 U.S.C.A. § 688 (1964), provides:

Any seaman who shall suffer personal injury in the course of his employment may, at his election, maintain an action for damages at law, with the right of trial by jury, and in such action all statutes of the United States modifying or extending the common-law right or remedy in cases of personal injury to railway employees shall apply; and in case of the death of any seaman as a result of any such personal injury the personal representative of such seaman may maintain an action for damages at law with the right of trial by jury, and in such action all statutes of the United States conferring or regulating the right of action for death in the case of railway employees shall be applicable. Jurisdiction in such actions shall be under the court of the district in which the defendant employer resides or in which his principal office is located.

Smith, the injured pumper, was a Jones Act seaman and we affirm.

## I.

Smith brought this suit against Noble Drilling Corporation, his employer, under the Jones Act and the General Maritime Law to recover damages and maintenance and cure for the injuries he received while working for Noble Drilling on a stationary drilling platform located in the Gulf of Mexico on July 15, 1963. The facts are not in dispute. Noble Drilling, pursuant to a contract with the California Oil Company, had undertaken to drill the well in question. Except for a small but essential mud pump located on a tender known as the S-25, which was owned and operated by California Oil, all of Noble Drilling's equipment was located on the platform on which Smith was injured.

Smith was hired to work on the drilling platform with one of the completion crews. However, because of his experience, Smith was assigned to operate the mud pump which was permanently affixed to the deck of the tender. He ate and slept aboard the S-25 which admittedly was a self-propelled "vessel." His duties required him to operate and repair the pump, to mix mud and to check the viscosity of the mud, all of which had to be performed aboard the tender. Smith, therefore, of necessity spent a substantial percentage of his working time on the tender. On the day of his injury Smith had worked aboard the tender from midnight until almost noon, and he had come up to the platform only a few minutes before his injury.

Upon these facts the jury found that Smith was a seaman and a member of the crew of the tender. It also found that Noble Drilling was negligent and that the damages sustained by Smith amounted to $30,000. The court then determined that Smith was entitled to maintenance and cure. Judgment was entered accordingly.

## II.

On appeal the basic contention of Noble Drilling is that Smith was an oil field worker whose remedy is under the Longshoremen's and Harbor Workers' Compensation Act,[2] as extended by the Outer Continental Shelf Lands Act,[3]

2. The Longshoremen's and Harbor Workers' Compensation Act, 33 U.S.C.A. § 903 (1957), provides:
    (a) Compensation shall be payable under this chapter in respect of disability or death of an employee, but only if the disability or death results from an injury occurring upon the navigable waters of the United States (including any dry dock) and if recovery for the disability or death through workmen's compensation proceedings may not validly be provided by State law. No compensation shall be payable in respect of the disability or death of—
        (1) A master or member of a crew of any vessel, nor any person engaged by the master to load or unload or repair any small vessel under eighteen tons net; or
        (2) An officer or employee of the United States or any agency thereof or of any State or foreign government, or of any political subdivision thereof.
    (b) No compensation shall be payable if the injury was occasioned solely by the intoxication of the employee or by the willful intention of the employee to injure or kill himself or another.

3. The relevant part of the Outer Continental Shelf Lands Act, 43 U.S.C.A. § 1333(c) (1964), provides:
    (c) With respect to disability or death of an employee resulting from any injury occurring as the result of operations described in subsection (b) of this section, compensation shall be payable under the provisions of the Longshoremen's and Harbor Workers' Compensation Act. For the purposes of the extension of the provisions of the Longshoremen's and Harbor Workers' Compensation Act under this section—
        (1) the term "employee" does not include a master or member of a crew of any vessel, or an officer or employee of the United States or any agency thereof or of any State or foreign government, or of any political subdivision thereof;
        (2) the term "employer" means an employer any of whose employees

rather than under the Jones Act. Noble Drilling contends that Smith does not have a right to damages under the Jones Act because he was not a "member of the crew" of any vessel even though technically he may have had the status of a seaman.

This argument ignores the origin and purpose of the term "member of the crew." This term does not appear in the provisions of the Jones Act, which speaks only of "[a]ny seaman who shall suffer personal injury in the course of his employment." Originally the word "seaman" was interpreted so broadly that it encompassed "stevedores employed in maritime work on navigable water" as their work "was a maritime service formerly rendered by the ship's crew." International Stevedoring Co. v. Haverty, 1926, 272 U.S. 50, 47 S.Ct. 19, 71 L. Ed. 157, 159. Subsequently and partly as a result of the *Haverty* decision, Congress passed the Longshoremen's and Harbor Workers' Compensation Act which covers all maritime workers except "master[s] or member[s] of a crew of a vessel." Offshore Company v. Robison, 5 Cir. 1959, 266 F.2d 769, 774, 75 A.L.R.2d 1296. The Supreme Court then held that the purpose and effect of this enactment was to limit the benefits of the Jones Act to employees who are either masters or members of the crew of a vessel and whose injuries occur during the course of their employment. Swanson v. Marra Bros., Inc., 1946, 328 U.S. 1, 66 S.Ct. 869, 90 L.Ed. 1045.

From this brief history of the term "member of the crew" it should be apparent that the term is used primarily to distinguish maritime workers whose presence aboard ship is transitory from those with a more permanent attachment to the vessel. Stevedores and offshore roughnecks who do no more than sleep and eat aboard a tender fall into the former category. Freeman v. Aetna

Casualty & Surety Co., 5 Cir. 1968, 398 F.2d 808; Ross v. Delta Drilling Co., E.D.La.1962, 213 F.Supp. 270. The determination of which employees fall into the latter category presents a question of fact which is often difficult and which must be resolved on a case by case basis. Senko v. La Crosse Dredging Corp., 1957, 352 U.S. 370, 77 S.Ct. 415, 1 L.Ed. 2d 404; Gianfala v. Texas Company, 1955, 350 U.S. 879, 76 S.Ct. 141, 100 L. Ed. 775, reversing Texas Company v. Gianfala, 5 Cir. 1955, 222 F.2d 382; Bodden v. Coordinated Caribbean Transport, 5 Cir. 1966, 369 F.2d 273.

Although in the historical sense the term "seaman" is broader than "member of the crew," the two terms have come to be used interchangeably as synonyms. "In the context used in this and similar cases involving the maritime amphibious worker on drilling craft offshore in the Gulf of Mexico, the difference between the two terms 'seaman' and 'member of the crew of any vessel' is so slight as to be virtually indiscernible and, for all practical purposes, may be disregarded." Boatel, Inc. v. Delamore, 5 Cir. 1967, 379 F.2d 850, 859. Accordingly, we have approved interrogatories which used the term "member of the crew" instead of "seaman." Offshore Company v. Robison, *supra*. Likewise it is proper for a district court to use "member of the crew" in instructing the jury as to what connection with a vessel a maritime worker must have in order to be a Jones Act seaman. Since the terms "seaman" and "member of the crew" have drowned in their own semantics, what is now decisive is the analysis of what constitutes a Jones Act seaman in the judge's instructions to the jury— how he resuscitates the deoxygenated terms by explaining the significance of the employee's water domicile, his commitment to the ship, and the locus of his labor.

are employed in such operations; and

   (3) the term "United States" when used in a geographical sense

includes the outer Continental Shelf and artificial islands and fixed structures thereon.

Today, therefore, there is no practical difference between the terms "seaman" and "member of the crew," except in those cases where the maritime employee had only such transitory connections with the vessel that it could be said almost as a matter of law that he was not a crew member. *Cf.* Texas Company v. Savoie, 5 Cir. 1957, 240 F.2d 674, cert denied, 355 U.S. 840, 78 S.Ct. 49, 2 L.Ed.2d 51. Thus if there is an evidentiary basis for this status question to go to the jury, the distinction has lost all relevance. See, Hardaway Contracting Co. v. O'Keefe, 5 Cir. 1968, 414 F.2d 657.

For the standard to be used in determining whether there was a jury question with respect to Smith's maritime status, we refer to the words of Judge Wisdom in Offshore v. Robison, *supra*, 266 F.2d at 779–780:

"[T]here is an evidentiary basis for a Jones Act case to go to the jury: (1) if there is evidence that the injured workman was assigned permanently to a vessel (including special purpose structures not usually employed as a means of transport by water but designed to float on water) or performed a substantial part of his work on the vessel; and (2) if the capacity in which he was employed or the duties which he performed contributed to the function of the vessel or to the accomplishment of its mission, or to the operation or welfare of the vessel in terms of its maintenance during its movement or during anchorage for its future trips.

\*   \*   \*   \*   \*   \*

"Attempts to fix unvarying meanings have a firm legal significance to such terms as 'seaman,' 'vessel,' 'member of a crew' must come to grief on the facts. These terms have such a wide range of meaning, under the Jones Act as interpreted in the courts, that, except in rare cases, only a jury or trier of facts can determine their application in the circumstances of a particular case. Even where the facts are largely undisputed, the question at issue is not solely a question of law when, because of conflicting inferences that may lead to different conclusions among reasonable men, a trial judge cannot state an unvarying rule of law that fits the facts. The Jones Act cases involving coverage are similar in this respect to many negligence and contributory negligence cases.

"Under the Jones Act, judicial appraisal of the proofs to determine whether a jury question is presented is narrowly limited to the single inquiry whether with reason, the conclusion may be drawn that the claimant was a seaman, a member of a crew of a vessel."

Applying this standard to the case *sub judice*, we find that "with reason, the conclusion may be drawn that [Smith]' was a seaman member of the crew of a vessel." First, Smith was assigned to operate the mud pump which was permanently emplaced on the tender S–25, which undisputedly was a vessel, and he spent a substantial amount of his working time on the vessel. Second, his duties with respect to the mud pump directly contributed to the fulfillment of one of the primary functions of the tender S–25—the pumping of mud and other fluids to the drilling platform for use there. There was, therefore, sufficient evidence to send the status question to the jury and to support the jury's finding that Smith was a Jones Act seaman. See, Producers Drilling Co. v. Gray, 5 Cir. 1966, 361 F.2d 432; Stanley v. Guy Scroggins Construction Co., 5 Cir. 1961, 297 F.2d 374; *cf.* Braniff v. Jackson Ave.-Gretna Ferry, Inc., 5 Cir. 1960, 280 F.2d 523.

In navigating the legal shoals to the decision in this case, we are guided by Boatel, Inc. v. Delamore, *supra*, a decision which has only immaterial factual distinctions from the case at bar. In *Boatel*, the injured seaman worked in the engine room of a tender which was moored for considerable periods of time to a stationary drilling platform in the

Gulf of Mexico and, like Smith, he slept and ate aboard the vessel. There are, however, two factual differences between *Boatel* and the case under consideration: (1) the injured employee there held United States Merchant Marine Seamen's papers issued by the Coast Guard, and (2) he was injured on board the tender whereas Smith was injured on the drilling platform. In this factual context this Court per Judge Ainsworth held that the injured seaman was covered by the Jones Act:

> "The Deputy Commissioner's conclusion that the JOSEPH ZEPPA was primarily being employed to assist in drilling operations and that all of claimant's duties were solely in connection with the drilling operations is of no moment under the circumstances here. Delamore was primarily engaged in performing duties aboard the vessel in fulfilling the function for which the vessel was designed. By his work in the engine room as a diesel motorman, he contributed to the mission of the vessel which was to cooperate in the drilling operations. In this regard, therefore, he was primarily aiding in navigation of the vessel whose purpose was the drilling of an oil well." 379 F.2d at 858–859.

In view of the Fifth Circuit policy of liberally construing the Jones Act, the factual distinctions between *Boatel* and the case *sub judice* should not compel a contrary result. The absence of seamen's papers does not matter as Smith did have substantial duties aboard the S-25. See, Offshore Company v. Robison, *supra*.[4] Since a man does not become a seaman by papers alone, he should not be denied his statutory status as a seaman merely because he is not a paper seaman. We also find it immaterial that Smith was injured on the fixed drilling platform instead of on the tender. Crafton v. Tennessee Valley Sand & Gravel Co., 5 Cir. 1969, 408 F.2d 1096, teaches us:

> "Since recovery under the Jones Act is predicated on the injury taking place 'in the course of employment,' the exact place of injury is not controlling. Magnolia Towing Company v. Pace, 5 Cir., 1967, 378 F.2d 12. The only requirement is that the seaman be 'doing the work of his employer pursuant to his employer's orders.' Braen v. Pfeifer Oil Transportation Company, 1959, 361 U.S. 129, 133, 80 S.Ct. 247, 250, 4 L.Ed.2d 191 * *."

See also Creel v. Drill Tender Jack Cleverly, W.D.La.1966, 264 F.Supp. 98, 100, wherein a "mud man" who was a member of the crew of a tender was allowed recovery even though he was injured while working on the drilling platform; and Senko v. La Crosse Dredging Corp., *supra*, 352 U.S. at 373, 77 S.Ct. at 417, 1 L.Ed.2d at 408, wherein the Supreme Court held: "[t]he fact that petitioner's injury occurred on land is not material."

In concluding its argument on this issue, Noble Drilling makes the time-worn contention that allowing recovery here would constitute an extension of the statutory word "seaman" far beyond the bounds intended by Congress. We, like the court in Offshore Company v. Robison, find this position to be untenable:

> "There is no reason for lamentations. Expansion of the terms 'seaman' and 'vessel' are consistent with the liberal construction of the Act that has characterized it from the beginning and is consistent with its purposes. Within broad limits of what is reasonable, Congress has seen fit to allow juries to decide who are seamen under the Jones Act. There is nothing in the act to indicate that Congress intended the law to apply only to conventional members of a ship's company. The absence of any legislative restriction has enabled the law to develop

4. "Robison had never worked as a seaman on board a vessel, as the terms 'seaman' and 'vessel' are ordinarily understood. *He had never carried seaman's* *papers*, and none of the oil crew carried seaman's papers as a condition of employment." [Emphasis added.] 266 F.2d at 771.

naturally along with the development of unconventional vessels, such as the strange-looking specialized watercraft designed for oil operations offshore and in the shallow coastal waters of the Gulf of Mexico. Many of the Jones Act seamen on these vessels share the same marine risks to which all aboard are subject. And in many instances Jones Act seamen are exposed to more hazards than are blue-water sailors. They run the risk of top-heavy drilling barges collapsing. They run all the risks incident to oil drilling." 266 F.2d at 780.

### III.

■ The final unsupportable position advanced by Noble Drilling is that Smith is not entitled to maintenance and cure because he was not "in the service of the ship" at the time of his injury. If a seaman is "in the service of the ship" while on shore leave in a foreign port, see, Central Gulf Steamship Corp. v. Sambula, 5 Cir. 1968, 405 F.2d 291, 299, it would be unreasonable to say that a seaman working out from our shores in the Gulf of Mexico on a drilling platform, which his vessel has the function of servicing, is not also in the service of his ship. See, Warren v. United States, 1951, 340 U.S. 523, 71 S.Ct. 432, 95 L.Ed. 503 (seaman injured by fall out of window of dance hall while on authorized shore leave held to be "in the service of the ship" and entitled to maintenance and cure). We therefore hold that Smith was entitled to maintenance and cure. To hold otherwise would relieve the shipowner of his long recognized obligation to care for seamen injured in connection with "hazards encountered only by reason of the voyage," Aguilar v. Standard Oil Co., 1942, 318 U.S. 724, 733, 63 S.Ct. 930, 87 L.Ed. 1107, 1115, and would be contrary to the proposition that doubts as to liability for maintenance and cure are to be resolved in favor of the wounded seaman. Id., 318 U.S. at 735, 63 S.Ct. at 936, 87 L.Ed. at 116; Warren v. United States, *supra*, 340 U.S. at 530, 71 S.Ct. at 436, 95 L.Ed. at 510.

We affirm the judgment of the district court that Smith is entitled to damages under the Jones Act and to maintenance and cure.

Affirmed.