Tommy Gene **KEENER**, Plaintiff-Appellant,

v.

**TRANSWORLD DRILLING COMPANY** et al., Defendants-Appellees.

No. 72–2329

Summary Calendar.*

United States Court of Appeals, Fifth Circuit.

Oct. 17, 1972.

---

* Rule 18, 5th Cir.; see Isbell Enterprises, Inc. v. Citizens Casualty Co. of N.Y., 431 F.2d 409, Part I (5th Cir. 1970).

Thomas M. Bergstedt, Lake Charles, La., for plaintiff-appellant.

Daniel T. Murchison, Natchitoches, La., Allen L. Smith, Jr., Lake Charles, La., Robert B. Acomb, Jr., New Orleans, La., for defendants-appellees.

Before BELL, DYER and CLARK, Circuit Judges.

PER CURIAM:

The appellant, Tommy Gene Keener, was employed during the summer of 1969 as a rotary helper on a fixed stationary drilling platform in the Gulf of Mexico. This job required him to work in "hitches" of seven days, followed by seven days off. Before completing his third hitch of employment, Keener allegedly suffered an injury to his knee while working on the drilling platform. Subsequently he brought an action against his employer and others under the Jones Act and General Maritime Law. The District Court denied Keener's motion for summary judgment in his favor on the issue of whether Keener was a seaman at the time of his injury. Both parties then agreed to waive the jury and to allow the court to resolve the issue on the record and depositions filed. The court held that Keener was not a seaman and, therefore, could not recover under the Jones Act. We affirm.

The test to be used for determining seaman status was delineated by this court in Offshore Company v. Robison, 266 F.2d 769, 779 (5th Cir. 1959) (footnote omitted):

[T]here is an evidentiary basis for a Jones Act case to go to the jury: (1) if there is evidence that the injured workman was assigned permanently to a vessel (including special purpose structures not usually employed as a means of transport by water but designed to float on water) or performed a substantial part of his work on the vessel; and (2) if the capacity in which he was employed or the duties which he performed contributed to the function of the vessel or to the accomplishment of its mission, or to the operation or welfare of the vessel in terms of its maintenance during its movement or during anchorage for its future trips.

The quoted language refers to the showing which must be made before the trier of fact will be permitted to find that the worker was a seaman. Here the trial judge, after the parties waived the jury, resolved the issue adversely to the appellant. Though the facts were largely uncontested, his ruling was not solely on a matter of law, but rather was a ruling on a mixed question of law and fact.[1]

1. Attempts to fix unvarying meanings have a firm legal significance to such terms as "seaman", "vessel", "member of a crew" must come to grief on the facts. These terms have such a wide range of meaning under the Jones Act as interpret-

But even if the appellant merely had to demonstrate that the District Court erred in a ruling on a matter of law, rather than overcoming the presumption that attaches to his ruling on a question of fact, we would still be required to rule that the appellant has not carried his burden.

Keener rests his claim to the status of seaman upon his connection with the tender which serviced the drilling platform. Since there were no living facilities on the platform, the platform crew ate, slept, and spent their off-duty time on the tender. Were that Keener's only connection with the tender, however, it is clear that he could not claim the status of seaman or "member of the crew."

From this brief history of the term "member of the crew" it should be apparent that the term is used primarily to distinguish maritime workers whose presence aboard ship is transitory from those with a more permanent attachment to the vessel. Stevedores and offshore roughnecks who do no more than sleep and eat aboard a tender fall into the former category. Noble Drilling Corp. v. Smith, 412 F.2d 952, 955 (5th Cir. 1969).[2]

It is contended, however, that Keener performed certain duties aboard the tender which are sufficient to bring him within the rule announced in Robison and in the cases which followed. *See* Kimble v. Noble Drilling Corp., 416 F.2d 847 (5th Cir. 1969); Noble Drilling

Corp. v. Smith, *supra*. In particular, it is pointed out that Keener spent either three or four days of his second "hitch" scraping paint and painting in the engine room of the tender while certain drilling platform equipment was inoperative. Since these four days represent approximately twenty to twenty-five percent of the time that Keener worked for the drilling company, he argues that a substantial part of his duties were performed aboard the tender and, thus, he was a seaman.

Such incidental and temporary duty aboard the tender does not have the effect contended for by the appellant. The law requires more than a showing that the claimant performed the work of a seaman on one isolated occasion. Here, Keener's work chipping paint and painting on board the tender was no more than fortuitous, occasioned by an electrical failure necessitating a temporary cessation of the drilling operations. As soon as repairs were completed Keener resumed his normal and customary work on the drilling platform. While his work during the temporary hiatus in the drilling operations may have been sufficient to afford him seaman's status during the period of his occupation with the tasks aboard the tender, such an isolated period of working as a seaman does not enable him to carry that title into perpetuity.[3] Just as there can be no precise delineation of that quantum of duties which, when performed on

ed in the courts, that, except in rare cases, only a jury or trier of facts can determine their application in the circumstances of a particular case. Even where the facts are largely undisputed, the question at issue is not solely a question of law when, because of conflicting inferences that may lead to different conclusions among reasonable men, a trial judge cannot state an unvarying rule of law that fits the facts. The Jones Act cases involving coverage are similar in this respect to many negligence and contributory negligence cases.
Offshore Co. v. Robison, *supra* 266 F.2d at 779–780 (footnotes omitted).

2. "In the context used in this and similar cases involving the maritime amphibious worker on drilling craft offshore in the Gulf of Mexico, the difference between the two terms 'seaman' and 'member of the crew of any vessel' is so slight as to be virtually indiscernible and, for all practical purposes, may be disregarded." Boatel, Inc. v. Delamore, 5 Cir. 1967, 379 F.2d 850, 859.
Noble Drilling Corp. v. Smith, *supra*, 412 F.2d at 955.

3. *See* Desper v. Starved Rock Ferry Co., 342 U.S. 187, 190–191, 72 S.Ct. 216, 96 L.Ed. 205 (1952).

board a vessel, will make the employee a seaman,[4] similarly there is no bright-line test to be applied in determining the degree of frequency and regularity of performance which must be shown in order to claim the status. However, more is required than the one isolated occurrence in this case.

We do not hold that an employee must perform all of his duties or even the greater part of them, aboard the vessel in order to be considered a seaman. We merely hold that to meet the requirement of *Robison* that the workman "performed a substantial part of his work on the vessel" it must be shown that he performed a significant part of his work aboard the ship with at least some degree of regularity and continuity. See Labit v. Carey Salt Co., 421 F.2d 1333, 1335 (5th Cir. 1970).

Affirmed.

4. *Compare* Kimble v. Noble Drilling Corp., *supra,* and Noble Drilling Corp. v. Smith, *supra, with* Freeman v. Aetna Casualty & Surety Co., 398 F.2d 808 (5th Cir. 1968) *and* Lowe v. California Co., 296 F.Supp. 1264 (E.D.La.1969).