Curtis E. OWENS, Plaintiff-Appellant,

v.

DIAMOND M DRILLING COMPANY,
Defendant-Appellee.

No. 73-1658.

United States Court of Appeals,
Fifth Circuit.

Nov. 8, 1973.

Rehearing and Rehearing En Banc
Denied Dec. 17, 1973.

Wm. Henry Sanders, Jena, La., for plaintiff-appellant.

Leonard Fuhrer, Alexandria, La., individually and representing La. Trial Lawyers Association, amicus curiae.

John A. Jeansonne, Jr., Raymond Morgan Allen, Lafayette, La., for defendant-appellee.

Before GEWIN, AINSWORTH and MORGAN, Circuit Judges.

AINSWORTH, Circuit Judge:

In this suit brought under the Jones Act (46 U.S.C. § 688) and the general maritime law, the sole question for decision is whether plaintiff, an offshore oil field worker, was a member of the crew of a vessel, the ST 65, at the time he was allegedly injured in an accident. The district judge granted defendant's

motion for a summary judgment on the status issue and dismissed the suit for lack of jurisdiction.[1] We affirm.

Plaintiff Curtis E. Owens brought this suit against Diamond M Drilling Company for injuries alleged to have been sustained while in the employ of defendant in an accident on January 3, 1972. Claimant was employed several months prior thereto, during October 1971, though he had been employed on prior occasions by Diamond M. He was employed as a member of a drilling crew on Diamond M's Rig No. 55 as a motorman, and was stationed aboard the defendant's tender, the ST 65, a support vessel to the drilling activity. The defendant's drilling rig was located on a stationary drilling platform in the Gulf of Mexico on the Outer Continental Shelf off the Louisiana coast. The platform was owned by Texaco and Diamond M was drilling a well for it at the time. The drilling rig on the platform and the tender ST 65 were owned by Diamond M. Plaintiff alleges that while so employed as a motorman, and while physically present on the drilling rig situated on the platform, he was struck on the head by a falling board and sustained injuries.

Diamond M had two drilling crews and one roustabout crew, all of whom lived, ate and slept aboard the tender, the ST 65. The drilling crews worked 12-hour shifts in 7-day "hitches," and their work was principally on the platform where the rig was situated. The roustabout crew was the crew for the tender and responsible for keeping the tender up and repairing it when it needed repairs. This crew was also in charge of unloading supplies from work boats and assisted in lifting supplies from the tender to the adjacent Texaco platform. The tender was not moored to the fixed platform but was secured with numerous anchors and access was had by a device known as the widowmaker which was let down from the drilling platform onto the deck of the tender. Plaintiff's principal duty as motorman required that he take care of the diesel engines which powered the rotary and draw works of the drilling rig, which were situated on the platform. There were other miscellaneous duties which he performed occasionally on the tender. On infrequent occasions, in rough weather, the tender broke loose from its anchor chains and pulled away from the Texaco platform. If plaintiff happened to be working at the time on the platform he remained there until the tender was returned. However, if he happened to be aboard the tender he was given some miscellaneous duties such as chipping, painting, washing, cleaning up and tying down supplies until the tender returned. He occasionally left the drilling platform to fetch tools and supplies situated on the tender. Sometimes he assisted in mixing mud on the tender though that duty was primarily the responsibility of the pump man assisted by the roustabouts.

In denying seaman's status to plaintiff the district judge in detailed, written reasons held that "plaintiff's work activities on board the ST 65 were irregular and fortuitous in nature." He found that claimant's activities on the vessel were "minimal in nature and in no way justify his contention that he served as a member of the crew of the tender." He found that Owens did not perform a significant part of his work aboard the tender, and "certainly performed no work aboard the ship with any degree of regularity and continuity."

We think the district judge's ruling was correct. Plaintiff's principal duties as a motorman on Diamond M's Rig No. 55 were to take care of the diesel engines situated on Texaco's fixed stationary platform. Here he was allegedly injured. His attempt to establish

---

1. Defendant contended that plaintiff's sole remedy was under the Longshoremen's & Harbor Workers' Compensation Act (33 U. S.C. § 901 et seq.), as applied by the Outer Continental Shelf Lands Act (43 U.S.C. § 1333(c)).

seaman's status on the basis of a miscellany of incidental and occasional duties aboard the drilling tender ST 65 is unconvincing. Though stationed aboard the ST 65 for living purposes and some incidental miscellaneous duties, his employment was essentially that of a motorman on the Diamond M's Rig No. 55 situated on the fixed platform. It cannot properly be said that he was permanently assigned to the tender when in fact he was assigned to the drilling rig on the platform. *See* Offshore Company v. Robison, 5 Cir., 1959, 266 F.2d 769. Nor did he perform a substantial part of his work on the tender. In our recent decision in Keener v. Transworld Drilling Company, 5 Cir., 1972, 468 F.2d 729, we affirmed the dismissal of a suit of a claimant under the Jones Act who, like plaintiff here, worked on a stationary drilling platform in the Gulf but ate, slept and performed miscellaneous duties aboard a tender which serviced the drilling platform. Keener spent several days scraping paint and painting in the engine room of the tender while the drilling platform equipment was inoperative and he contended that a substantial part of his duties were performed aboard the tender and that he was a seaman. We denied seaman's status because "[s]uch incidental and temporary duty aboard the tender" was insufficient to make him a seaman. We further stated in *Keener* that to meet the requirements that a workman perform a substantial part of his work on the vessel in order to have the status of a seaman "it must be shown that he performed a significant part of his work aboard the ship with at least some degree of regularity and continuity." 468 F.2d at 732. That is not the case here.

Plaintiff contends that this case was inappropriate for determination by summary judgment though he concedes that in a proper case summary disposition is proper. The district judge had before him lengthy depositions of the driller, derrick man, pump man, a petroleum engineer, and plaintiff himself, in which every facet of plaintiff's employment was fully explored. All information pertaining to plaintiff's status was before the court and was undisputed for purposes of the motion. This was accordingly a proper case for summary judgment for we cannot say with reason that the conclusion may be drawn that claimant was a member of a crew of a vessel so as to present a jury question. *See* Offshore Company v. Robison, *supra* at 780. The issue of status is not necessarily a question for the jury in every case. Producers Drilling Company v. Gray, 5 Cir., 1966, 361 F.2d 432, 435, and cases cited therein. The law applicable to maritime oil workers has developed to the point where in the appropriate case a legal determination may be made rather than submit the matter to a jury. Marine Drilling Company v. Autin, 5 Cir., 1966, 363 F.2d 579, 580. Ordinarily, whether claimant is a seaman is a factual dispute to be resolved by the jury, but if there is no genuine factual dispute to be resolved, the district court may properly refuse to submit an issue to the jury where the only rational inference to be drawn from the evidence is that the claimant was not a seaman. *See* Jenkins v. Aquatic Contractors & Engineers, 5 Cir., 1971, 446 F.2d 520, 521.

The district judge held that none of the miscellany of tasks performed on the tender was done on a regular basis and that plaintiff did not satisfy the requirements of our recent holding in Keener. This holding was not erroneous.

*Affirmed.*