**Earl J. GUILBEAU, Plaintiff,**

v.

**FALCON SEABOARD DRILLING COMPANY and Standard Insurance Company, Defendants.**

**Civ. A. No. 10313.**

United States District Court
E. D. Louisiana,
New Orleans Division.

April 17, 1963.

Stanley L. Perry, Galliano, La., Dodd, Hirsch, Barker & Meunier, Harold J. Lamy, New Orleans, La., for plaintiff.

Christovich & Kearney, A. R. Christovich, Jr., New Orleans, La., for defendants.

AINSWORTH, District Judge.

This is a suit under the Jones Act, 46 U.S.C.A. § 688, tried by the court without a jury, which at the outset requires a determination of the status of plaintiff as to whether he was a seaman on January 21, 1960, when he sustained physical injuries while employed by defendant Falcon as a floorhand on a submersible oil drilling rig in inland waters near the Louisiana coast of the Gulf of Mexico.

The drilling rig known as Rig No. 4 is a non-self-propelled barge which is moved from one drilling location to another by tugs. It is approximately 260 feet long by 52 feet wide, and is fitted with sleeping quarters and a galley. It has three compartments on each side and water is pumped out of these compartments to float it or pumped in to sink it on location. At the time of the accident the drilling rig was located in a dredged, navigable slip 250 feet wide, having been towed there and set in position by tugs after which its compartments were filled with water and the barge sunk into drilling position.

■■ We must decide preliminarily if this craft is a vessel. The term "vessel" is applied to floating structures capable of transporting something over the water. Gilmore and Black on The Law of Admiralty, § 1–11, p. 30. However, it may also mean something more than a means of transportation on water. It can be a special purpose craft, an unconventional vessel not usually employed as a means of transporting by water but designed for occupations offshore and in the shallow coastal waters of the Gulf of Mexico. Offshore Company v. Robi-

son, 5 Cir., 1959, 266 F.2d 769, 780. The submersible drilling rig here is such a special purpose craft and there can be little question that the drilling barge known as Rig No. 4 is a vessel.

■■ But was plaintiff a seaman entitled to sue under the Jones Act? This, like the preceding question, is one to be determined by the court as the trier of fact. We believe that he was. Plaintiff was a floorhand in the drilling crew of Rig No. 4. He worked on one of the three 8-hour shifts which the crews maintained on the barge and was more or less permanently assigned as a regular employee on this rig. Though there were sleeping quarters aboard, he and the other members of the crew lived ashore and brought their lunch. They were transported to the barge over water in a speed hull of defendant Falcon. Occasionally they slept on the rig and used the galley, but this was not a normal occurrence. Plaintiff and other members of the crew did maintenance work, repairs, chipping and painting when the rig was laid up, helped tie the lines of tugs to the rig when the rig was being moved, and tied up pipe and supply barges and ships which serviced the drilling rig. He was otherwise principally engaged as a floorhand assisting in the drilling of a well exploring for oil and gas. His work, therefore, considered in its entirety, contributed to the accomplishment of the mission of the vessel, Rig No. 4, which was to drill a well in inland waters seeking oil and gas.[1] The rig had been floated into a dredged slip where it was drilling a well. It was not engaged in transportation of either passengers or freight. But admiralty jurisdiction is not limited to transportation of goods and passengers in interstate or foreign commerce but depends upon the jurisdiction conferred in United States Constitution Article 3, § 2, extending the judicial power of the United States to all cases of admiralty and maritime jurisdiction, including canals and other waters even if they be privately owned or claimed. McKie v. Diamond Marine Co., 5 Cir., 1953, 204 F.2d 132.

Robison, supra, does not require that the trier of fact hold that plaintiff is a seaman merely because he was working at the time of his injury on a submersible, floatable drilling barge, but it does permit such a finding when the case justifies it.[2] We believe that the facts and circumstances here amply support a finding that plaintiff was a seaman entitled to sue under the Jones Act. As was said in Robison, supra (p. 780 of 266 F.2d), "There is nothing in the [Jones] act to indicate that Congress intended the law to apply only to conventional members of a ship's company. The absence of any legislative restriction has enabled the law to develop naturally along with the development of unconventional vessels, such as the strange-looking specialized watercraft designed for oil operations offshore and in the shallow coastal waters of the Gulf of Mexico. Many of the Jones Act seamen on these vessels share the same marine risks to which all aboard are subject. And in many instances Jones Act seamen are exposed to more hazards than are blue-water sailors. They run the risk of top-heavy drilling barges collapsing. They run all the risks incident to oil drilling."[3]

It is true that the principal activity of plaintiff was to assist in the drilling of an oil well and that he was very much like any other oil field worker working on a land drilling rig. But this is also true of a surgeon serving as a member of the crew of a floating hospital. His function contributes to the accomplishment of the mission of the hospital ship and is no different from that of a surgeon operating in a hospital on land. Offshore Company v. Robison, 5 Cir., 1959, 266 F.2d

1. See Gahagan Const. Corporation v. Armao, 1 Cir., 1948, 165 F.2d 301, for discussion of the definition of a "seaman."

2. See Gianfala v. Texas Company, 350 U. S. 879, 100 L.Ed. 775, 76 S.Ct. 141.

3. See also 46 U.S.C.A. § 713 for definition of a "seaman" as being generally every person who shall be engaged to serve in any capacity on board a vessel.

769, 776. Nor is the performance of a musician on a passenger vessel who thereby contributes to the mission of the vessel and is, therefore, a seaman any different than that of a musician playing in Carnegie Hall. He may be reading and performing the same score. The Sea Lark, D.C.Wash., 1926, 14 F.2d 201.[4]

■■ Plaintiff was hurt as the result of both the negligence of the driller and the unseaworthiness of the appliances and equipment of the drilling barge. It is a settled rule of law that the vessel and her owner are liable to indemnify a seaman for injury caused by unseaworthiness of the vessel's appliances and equipment and that the owner's obligation is to supply and keep its proper appliances in order. Norris, The Law of Seamen, § 616. He and another member of the crew were handling a pair of elevator latches, sometimes referred to as elevators, which are appliances necessary to hold drilling pipe in position while additional joints of pipe are being added to the drilling string. They each weigh about 150 pounds and can usually be opened by one man. However, they were borrowed from another drilling contractor and were rusty and hard to open. It was necessary to oil them, to beat on them with a sledge hammer, and to pick them up with a line and drop them on the deck to open them. The driller was in a hurry, and so they were used though they were still in an unsatisfactory condition. When plaintiff and another crew member attempted to open the elevators, they were unable to do so because they were jammed. The driller came down to assist, grasped the latch on the elevators, gave a good pull and suddenly opened them, slamming them aganst plaintiff's thumb, causing severe injury. Plaintiff had not expected them to be jerked or that they would fly back and strike him. The driller was negligent by his impatience and disregard of the safety of the crewmen, including plaintiff, who worked under him. But for his negligence and the unsatisfactory condition of these appliances, the accident would never have happened.

There is no evidence of contributory negligence by plaintiff. He was working under directions of his superior and would never have been injured but for the driller having "yanked" the latch open, thereby swinging the elevator "ears" back and jamming them against plaintiff's thumb. If the elevators had been in proper working order the latch could have been opened by one man with no difficulty. Here three men were working on the elevators to open the elevator "ears," which gives a fairly good impression of the rusty condition of these appliances.

■ The injury to plaintiff was extremely painful. An orthopedist operated on the thumb which was badly crushed and attempted a graft on the thumb from a piece of bone taken from plaintiff's hip. This, of course, required hospitalization. The operation was not successful and plaintiff was again hospitalized for amputation of the top of his left thumb. The treatment required a long period of time and plaintiff was not discharged to return to work until thirteen months after the accident. The orthopedist testified that plaintiff suffered a 20 per cent permanent disability of the left hand. Plaintiff lost wages of about $6,500.00. He was paid Louisiana workmen's compensation in the sum of $700.00 for which credit must be given here. Under all circumstances the court believes that an award of $11,000.00, less $700.00 heretofore paid, or a net amount of $10,300.00, would be proper, and a decree will be entered accordingly.

4. See also Edelman, Maritime Injury and Death, p. 96, for illustrations of others held to be seamen, e. g., telephone operator, barber, chambermaid, stewardess, laundress, cook, bartender.