243 F.Supp. 629 (1965)
Talmon C. ROWALD, a seaman, Libelant,
v.
CARGO CARRIERS, INC., a Corporation, Respondent.
No. 64 A 131(2).
United States District Court E. D. Missouri, E. D.
June 7, 1965.
*630 Douglas MacLeod, St. Louis, Mo., Cohn, Cohn & Korein, East St. Louis, Ill., for libelant.
John C. Shepherd, St. Louis, Mo., for respondent.
MEREDITH, District Judge.
This cause was tried to the Court on March 9, 1965, on a stipulation of facts, the testimony of libelant and medical records from the United States Public Health Service. The Court has been fully advised by the exhibits and the briefs of counsel.
Prior to the trial the respondent filed an exception to the libel asking for dismissal of the cause on the ground of laches, because suit was not filed until four and one-half years after libelant's leaving the service of respondent, and on the further ground that maintenance and cure did not apply to the service of seamen in the inland waterways. The Court overruled the exceptions filed in a written memorandum and will not discuss them further here, except to say that the Missouri Statute of Limitations bars an action after five years and it is the opinion of the Court that this action is not barred by laches and that maintenance and cure does apply to seamen on the inland waterways.
This cause was filed on March 31, 1964, and was originally set for trial on February 23, 1965, and thereafter reset for March 8, 1965. On March 2, 1965, the respondent filed a motion to produce the medical records filed with the Social Security Department or to permit the respondent to obtain these records. The deposition of the libelant was taken on January 15, 1965, and the Court is of the opinion that while these records may be pertinent, the motion which was submitted along with the other matters, was untimely filed and is overruled.
This is an action for maintenance and cure. Libelant was a seaman who had been regularly employed by the respondent Cargo Carriers, Inc., since 1952. On March 6, 1959, while a member of the crew of the motor vessel "Carcrosse", libelant visited the out-patient clinic of the United States Public Health Service in St. Louis, Missouri, complaining of headaches. On March 11, 1959, the headaches became severe and libelant went to a family doctor where a diagnosis of brain tumor was made, and on March 19, 1959, in St. Louis, Missouri, surgery was performed removing the brain tumor. On April 8, 1959, Dr. Hawkins performed a second operation to remove a blood clot caused by the first operation.
The "Carcrosse" and other vessels owned by the respondent and on which the libelant was employed, operate on the inland waterways of the United States, the Mississippi River. The customary employment pattern on the "Carcrosse" by the libelant and other crew members was to have thirty days on board and thirty days ashore, being paid at all times whether aboard the ship or on shore. The headaches of libelant manifested themselves during a period of shore duty.
After his operation, libelant returned to work on June 15, 1959, aboard the "Carcrosse". On September 8, 1959, libelant had a "blackout" aboard the "Carcrosse" and was taken to a hospital at Clinton, Kentucky. This blackout at first thought to be a heat stroke, was subsequently diagnosed as a post-operative grand mal convulsion flowing from the brain tumor and the surgery for its removal. Libelant has not been employed since that date. On September 11, 1959, libelant was examined at the United States Public Health Service clinic in St. Louis, Missouri, and was referred to the United States Public Health Service Hospital in Chicago, Illinois. He was *631 hospitalized in Chicago from October 3, 1959, to November 23, 1959, given a medication to control the seizures, and released for limited duty. The expense of the treatment in St. Louis and Chicago was furnished by the United States Public Health Service, including maintenance, while an in-patient in said hospital. No transportation costs were paid.
The parties have stipulated a maintenance rate of $6.00 per day and 7¢ per mile for necessary travel as being reasonable. The principal distances involved are as follows: 180 miles from Perryville, Missouri, to St. Louis, Missouri, round trip; 600 miles from St. Louis, Missouri, to Chicago, Illinois, round trip; 450 miles from St. Louis, Missouri, to Memphis, Tennessee, round trip.
The libelant suffered grand mal convulsions under anti-convulsant medication on December 7, 1959, January 3, October 21, November 12 and November 19, 1960. He had been regularly treated with this medication and in Chicago on July 10, 1961, after withdrawing the anti-convulsant medicine from him for a period of three days as a test, he again suffered a convulsion.
Libelant has made a number of trips to the United States Public Health Service from his home in Perryville, Missouri, to Memphis, Tennessee, St. Louis, Missouri, and Chicago, Illinois, to obtain proper medication and for various other ailments unrelated to this operation, including a hernia, prostate trouble and asthma.
Libelant testified that on several occasions he talked to the Assistant Marine Superintendent of respondent and asked if he had anything coming and was advised that he had nothing coming. The last time this inquiry was made was sometime in 1960. Libelant learned about his possible right to maintenance and cure while at the United States Public Health Hospital in Memphis, Tennessee, and shortly thereafter in December 1963 libelant employed an attorney under a thirty-three and a third contingent fee contract to prosecute his suit for maintenance and cure.
At the time of trial respondent had paid nothing to the libelant for maintenance and cure. For a period of approximately four years prior to trial the libelant and his wife have been operating a boarding home in Perryville, Missouri, and libelant has been acting as the handyman in helping his wife run the boarding home. He has received a pension from the National Maritime Union effective from December 1959. On October 19, 1960, libelant applied for Social Security benefits due to disability and his claim was approved. On November 22, 1960, Dr. George Hawkins, Jr., made a summary of his findings during libelant's visit, on October 25, 1960:
"This patient is still having episodes in spite of large doses of anti-convulsant medication. He will probably continue to have convulsive episodes secondary to cerebral scaring in his right hemisphere resultant from his brain tumor and the operative removal of it. His convulsive disorder will be permanent."
On November 7, 1961, the libelant surrendered his seamen's papers at the request of the United States Public Health Service.
The libelant contends that he is entitled to maintenance and cure from March 6, 1959, up to and including the time of the trial, plus attorney's fees, interest and mileage for each trip from Perryville to the United States Public Health Service.
The respondent contends that it is liable for maintenance and cure, if any, only from September 8, 1959, to November 23, 1959, when libelant was discharged from the Chicago hospital as being fit for limited duty only; that it should not be responsible for attorney's fees or interest. Transportation for only one trip from Perryville, Missouri, to St. Louis, Missouri, to Chicago, Illinois, and return should be allowed. Respondent further contends that since the first onset of libelant's problems began at a *632 time when he was not aboard the ship, but at a time when he was on his thirty-day off period, that they should not be responsible for any maintenance and cure.
The district courts of the United States have jurisdiction of admiralty matters pertaining to a suit for maintenance and care of seamen employed on the inland waterways.
The facts in this case differ from the case of Haskell v. Socony Mobil Oil Co., 237 F.2d 707 (1st Cir. 1956). In that case the seaman was on a forty-six day vacation and was injured in an automobile accident and the Court held under these conditions the owner of the vessel was not responsible. While the instant disability of libelant is unrelated to and not caused by his employment, it manifested itself first while he was employed on a thirty-day off period but still a member of the crew. Applying the principles of Calmar S.S. Corp. v. Taylor, 303 U.S. 525, 58 S.Ct. 651, 82 L.Ed. 993 (1938), and Farrell v. United States, 336 U.S. 511, 69 S.Ct. 707, 93 L.Ed. 850 (1949), this Court finds the respondent is responsible for maintenance and cure under these circumstances.
Maintenance and cure should begin on September 8, 1959. Prior to that time libelant was employed by respondent. The difficult factual question to ascertain is when the maintenance and cure should end. The Court said in Farrell v. United States, supra, at page 517, 69 S.Ct. at page 710, quoting the language of the General Conference of the International Labor Organization at Geneva, which was ratified by the United States Senate, Article 4, paragraph 1, 54 Stat. 1696, thereof provides:
"`The shipowner shall be liable to defray the expense of medical care and maintenance until the sick or injured person has been cured, or until the sickness or incapacity has been declared of a permanent character.' * * *
"The Department of Labor issued a summary of the Convention containing the following on this subject: `The shipowner is required to furnish medical care and maintenance, including board and lodging, until the disabled person has been cured or the disability has been declared permanent.'"
The Court in Travis v. Motor Vessel Rapids Cities, 315 F.2d 805, at page 811, (8th Cir. 1963), held that:
"* * * even if further treatment be required to maintain or hold static a chronic condition, such fact does not extend maintenance and cure if the seaman's recovery has become fixed and his disease is chronic or incurable."
The Court is of the opinion that the maximum cure was reached in this case on October 25, 1960. At this point the libelant's condition had been stabilized and the use of drugs gave him such comfort as they could afford and it was obvious that this condition would continue and be permanent. Thereafter libelant required additional treatment and from time to time in the future libelant may require more treatment, which he can obtain without cost from the United States Public Health Service. None of this treatment will improve libelant's condition.
20 CFR 404.1501(a) defines disability:
"* * * `disability' means inability to engage in any substantial gainful activity because of a medically determinable physical or mental impairment which can be expected to continue for a long and indefinite period of time, or to result in death."
The libelant here at age 49, on October 19, 1960, applied for and received under Social Security, benefits because of his physical disability. In order to receive these benefits, his condition must have been such that it met the foregoing test of disability.
The stipulation of the parties shows that during this period of time for which the Court has allowed maintenance and cure, libelant was confined in the hospital at the expense of the United *633 States Public Health Service a total of 50 days, for which he is not entitled to maintenance and cure. From September 8, 1959, to October 25, 1960, is a total of 412 days, and minus the 50 days, will be maintenance and cure for a period of 362 days at $6.00 per day, or a total of $2,172.
During that same period of time, libelant made 11 round trips from Perryville, Missouri, to St. Louis, Missouri, @ 180 miles per round trip, or 1,980 miles; 2 round trips from Perryville, Missouri, to Chicago, Illinois, @ 780 miles per round trip, or 1,560 miles; a total of 3,540 miles. At 7¢ per mile, libelant is entitled to $247.80.
The award of interest and attorney's fees is discretionary with the Court. Vaughan v. Atkinson, 369 U.S. 527, 82 S.Ct. 997, 8 L.Ed.2d 88 (1962). The Court will not allow any interest, but attorney's fees will be awarded in the sum of $750.
Judgment will be entered for the libelant and against respondent in the total sum of $3,169.80.