Mary E. DAUGHDRILL, Individually and as Administratrix of Estate of Enis J. Daughdrill, Deceased; and as Guardian of minors Etta Sharolyn, Ronda Elizabeth, Enis Shay and Kathy Daughdrill

v.

DIAMOND "M" DRILLING COMPANY.

Civ. A. No. 13445.

United States District Court
W. D. Louisiana,
Lake Charles Division.

Oct. 27, 1969.

Kierr & Gainsburgh, New Orleans, La., J. K. Riley, Jackson, Miss., for plaintiffs.

Brame, Stewart & Bergstedt, Lake Charles, La., for defendant.

HUNTER, District Judge:

This claim is for the alleged wrongful death of Enis J. Daughdrill. In the early morning hours of April 9, 1967, an automobile in which he was riding ran off the road (Interstate Highway #10) into Kayouche Coulee near Lake Charles and he, the driver and the car owner were drowned. Claimants are decedent's widow, Elizabeth Garrett Daughdrill, and four minor children, Etta Sharolyn, Ronda Elizabeth, Enis Shay and Kathy Ronona Daughdrill; all are represented by Mrs. Daughdrill, as administratrix and guardian. Diamond Drilling Company, defendant, was the decedent's employer and the owner of Drill Barge #22 to which the decedent was en route at the time of his death.

The legal contention of the plaintiff is that Enis J. Daughdrill, when killed, was a member of the crew of and in the service of defendant's vessel; that he was killed by reason of the negligence of a fellow employee, also in the service of defendant's vessel; alternatively, it is contended that the death was caused by the negligence of the defendant's "agents," within the purview of the Jones Act (46 U.S.C.A. § 688). In the further alternative, the plaintiff contends, if the Jones Act is inapplicable be-

cause the decedent was not in the service of the defendant's vessel, that the defendant is liable under Louisiana law (Article 2315) for the negligence of the automobile driver on the theory that he was acting for and on behalf of the owner of the vehicle who, at the time of the accident, was transporting a prospective employee to the vessel for the defendant's benefit.

The defendant contends that there was no negligence proximate to the decedent's death; or that if there was any negligence proximate to the death, the defendant is not legally responsible therefor, under the Jones Act or otherwise.

### THE FACTS

1. At all times pertinent, Diamond M Drilling Company owned and operated the Drill Barge #22 (D/B 22).

2. The D/B 22 is a submersible-type barge, with a 12-foot deep hull; it floats onto location and sits on the waterbottom to drill oil or gas wells; it contains a galley and quarters for the men; at the time of the incident involved here the vessel was working in Trinity Bay, Texas.

3. For some time prior to April 3, 1967, Diamond M had employed Edward Hartzog, as driller; Kenneth Schwarzauer as motorman; Enis Daughdrill as derrickman; and Bobby Bullock, Richard Calcote and H. Gerald Little as floorhands or roughnecks in one of the drilling crew of the D/B 22. Hartzog, as driller, was the others' superior.

4. These men were all paid semi-monthly; their wages were computed on an hourly basis; their duty schedule was ten days on board the vessel (24 hours per day) and five days off; they had departed the D/B 22 on April 3, 1967 about 6:00 A. M. and were due back aboard at 6:00 A. M. on April 9th.

5. Edward Hartzog, Enis Daughdrill and Richard Calcote lived in Monticello, Mississippi; Kenneth Schwarzauer and Bobby Bullock lived in Silver Creek, seven miles away; and Gerald Little was then from Oma, Mississippi, eleven miles distant from Monticello.

6. From the time Hartzog began working as driller for Diamond M on the D/B 22, his crew rode to and from the vessel on land in his automobile.

7. On April 8, between 8:30 and 9:00 P.M. Edward Hartzog, Kenneth Schwarzauer, Enis Daughdrill, Bobby Bullock, Richard Calcote, in Hartzog's automobile, departed Monticello, Mississippi, for Anahuac or Double Bayou, Texas; Hartzog was driving; the trip was about ten hours.

8. Gerald Little was not with them; he had informed Hartzog that he would not return to the drill barge.

9. In the Hartzog car that night in Little's place was Carroll E. Martin, also of Silver Creek.

10. On the preceding day, Mrs. Carroll (Louise) Martin in Monticello was asked whether her husband was interested in working as a roughneck and she said she would inquire.

11. Hartzog had similarly contacted Enis Daughdrill, Richard Calcote and Gerald Little before they worked on the vessel.

12. The following day (April 8th) Hartzog contacted the Martins again, told Mrs. Martin her husband had the job and then spoke to Carroll Martin, himself, on the phone.

13. The same day, Carroll Martin went to the Prentiss, Mississippi Medical Center, where he was examined by Dr. Nelson Tyronne. Also examined on that date was Richard Calcote. Homer (Gerald) Little had been examined at the Prentiss Medical Center on March 4, 1967; Diamond M Drilling Company paid for all three of these examinations.

14. They drove to Baton Rouge and then to Lafayette; at Lafayette Hartzog asked Martin to drive and he did. Harzog, Daughdrill and Schwarzauer were seated in the rear of the car; Bullock and Calcote were in front with Martin.

15. At a point about two miles east of the intersection of Louisiana Highway 171 and Interstate Highway 10, Martin allowed the front wheel of the

car to run off the road and when he tried to get it back onto the highway, the back end of the car spun around and went rear-end-first into Kayouche Coulee. Martin, Hartzog and Daughdrill drowned; the others were injured and did not report to the barge.

16. After Enis Daughdrill's death, Mrs. Daughdrill's only communication from Diamond M was a check for the decedent's earned wages and condolence flowers with a card at his funeral. Mrs. Martin also received flowers with a card from Diamond M. The decedent's funeral and burial expenses were $1,459.20.

17. At the time of his death Enis Daughdrill was 42.5 years old and resided with his wife and four children in their own home in Monticello. In 1966 he earned $9,972.00. In 1965 he earned $6827.32. In 1964 he earned $4,408.76. In 1963 he earned $6,157.71.

18. When Enis Daughdrill died his widow was 39½ years old; his eldest daughter, Sharolyn, was 17½; Ronda was 14¾ths years of age; Shay, his only son, was 10¼th years of age; and the baby, Kathy, was 6¾ths years of age.

19. While he lived, the decedent did oilfield-type work, including offshore; his work schedules varied; sometimes he worked ten days on with five days off; other times he worked seven on and seven off.

20. When at home, the decedent manifested a keen interest in his family and its wellbeing; he insisted upon the children applying themselves diligently to their school work; he was cognizant of the value and importance of a formal education; he socialized with his children; they attended sporting events together; they hunted and fished and visited with one another.

## THE LAW

In order to maintain her cause of action under the Jones Act (46 U.S. C.A. § 688), the plaintiff must establish three ultimate facts which are amply supported by the evidence and its reasonable inferences. These facts are that:

(A) At the time of his death Enis J. Daughdrill was a seaman;

(B) He was then in the course of his employment; and

(C) His death was caused in whole or in part by the negligence of defendant's employees and/or agents.

*(A) Enis J. Daughdrill was a "seaman"*

For present purposes, the term "seaman" is virtually synonymous with being a "member of the crew of a vessel." Boatel, Inc. v. Delamore, 379 F.2d 850, 859 (5th Cir., 1967). The uncontradicted evidence is that all of Enis Daughdrill's work for the defendant was performed aboard the Drill Barge #22, a submersible-type "inshore" barge that floated onto its drilling locations, quartered its personnel, drilled its wells and moved on. Such a contrivance (as the D/B 22) is a "vessel" and its drillers, derrickmen and roughnecks are the "members of its crew." Boatel, Inc. v. Delamore, supra; Producers Drilling Co. v. Gray, 361 F.2d 432 (5th Cir., 1966); Lawrence v. Norfolk Dredging Co., 319 F.2d 805 (4th Cir., 1963); Ledet v. United States Oil of La., 237 F.Supp. 183 (E.D.La., 1964); Guilbeau v. Falcon Seaboard Drilling Co., 215 F.Supp. 909 (E.D.La., 1963).

Enis Daughdrill was, therefore, a "seaman."

*(B) Enis J. Daughdrill was killed "in the course of his employment."*

Jones Act claims are to be resolved in harmony with established doctrines of general maritime law of which the Jones Act is but one integral part. The Arizona v. Anelich, 298 U.S. 110, 56 S.Ct. 707, 80 L.Ed. 1075 (1936). Under maritime law a seaman is "in the service of his ship," even though he is ashore, whenever he is on authorized leave from, or is returning to, his vessel. Warren v. United States, 340 U.S. 523, 71 S.Ct. 432, 95 L.Ed. 503 (1951); Aguilar v. Standard Oil Co., 318 U.S. 724, 63 S.Ct. 930, 84 L.Ed. 1107 (1942). Had Enis Daughdrill been injured instead of being killed he would have been entitled to mainte-

nance and cure; Warren v. United States, supra; Aguilar v. Standard Oil Co., supra; Hunt v. Trawler Brighton, Inc., 102 F.Supp. 300 (D.C.Mass., 1952); German v. Carnegie-Illinois Steel Corp., 169 F.2d 715 (3rd Cir., 1948); Rowald v. Cargo Carriers, Inc., 243 F.Supp. 629 (D.C., E.D.Mo., 1965). Whatever may have been his status while at home, there is no question that at the time of the wreck he was, in fact, returning to his vessel; indeed, he was over halfway there. Plaintiff's decedent was actually answering that call; he was returning to the drill barge as he was expected to do.

■ Our conclusion is that, in keeping with the requirement of interpreting the Jones Act harmoniously with maritime law principles, a seaman who is "in the service of his ship", for the purposes of maintenance and cure is also "in the course of his employment" within the contemplation of the Jones Act. In Braen v. Pfeifer Oil Transport Co., 361 U.S. 129, 80 S.Ct. 247, 4 L.Ed.2d 191 (1959), the Supreme Court used language that we consider persuasive on this score:

"* * * the scope of a seaman's employment or the activities which are related to the furtherance of the vessel are not measured by the standards applied to land-based employment relationships * * * the term 'course of employment' under the [Jones] Act * * * is the equivalent of the 'service of the ship' formula used in maintenance and cure cases." 361 U.S. at p. 132, 80 S.Ct. at p. 250, 4 L.Ed.2d at p. 195.

■■ It would be less than reasonable to say that Daughdrill's "activity" of returning to defendant's drill barge was not in direct "furtherance of the vessel." The facts that the death occurred off the barge and arose directly from the negligent operation of an automobile are of no legal significance. Magnolia Towing Co. v. Pace, 378 F.2d 12 (5th Cir., 1967). When he drowned, Enis Daughdrill was "in the service of his vessel" and, a fortiori, "in the course of

his employment" for all purposes of this case.

*(C) Daughdrill's death resulted from the negligence of the defendant's employees or agents*

*(1) Martin was defendant's employee*

■ Plaintiff insists that Carroll Martin was as much an employee of Diamond M at the time of the wreck as were Hartzog, Daughdrill and the others. For the reasons previously set forth on Daughdrill's status as a seaman and his being "in the course of his employment," Hartzog, Schwarzauer, Bullock and Calcote were also "members of the crew" of the Drill Barge #22 and "in the service of that vessel" while returning to it. We conclude that Carroll Martin, who was actually driving the car, was also an employee.

The defendant says it had no relationship, whatsoever, with Carroll Martin whom it did not employ, whom it had never paid, and whom, it is suggested, the defendant did not even know existed. But, the facts are that Carroll Martin had been contacted by the defendant's driller, Hartzog, and he (Martin) had agreed to go to work for Diamond M. In the absence of contrary proof by the defendant, we are inclined to infer that Diamond M *was* contacted by Hartzog between the time he spoke to Mrs. Martin on Friday afternoon and the time he called Martin's house the following day. It should likewise be presumed that he had specific authority to have Mr. Martin examined and that the company had knowledge of his impending arrival aboard its barge.

We find that Carroll Martin had been employed by Diamond M Drilling Company, in accordance with its then current procedures, when he departed Monticello, Mississippi, in Edward Hartzog's car on the night of April 8, 1967, and that he was "in the course" of that employment when he allowed the vehicle to run into the Coulee on the morning of April 9th.

Paul Vernon testified (for the defendant) that in April, 1967, it was permis-

sible for a driller to clear a man through the company's Morgan City office and then have him examined at his home. Martin had been examined and doubtlessly had been passed; otherwise, Hartzog would not have taken him along. The barge's toolpusher, Mr. Holland, had never vetoed a man whom a driller brought to the barge with a "clean" physical. The "employment application," was nothing more than a formality, once a man had passed his physical and had his driller's "blessing."

Carroll Martin was negligent in the manner in which he proceeded towards the defendant's drill barge; his negligence killed Enis Daughdrill, and the defendant must be cast in judgment for the claimant's recoverable damages under the Jones Act. 46 U.S.C.A. § 688. Decedent was guilty of no negligence whatsoever.

## QUANTUM

Under the Jones Act the lawful elements of plaintiff's claim are:

a. The loss of support that the widow and children have suffered and will suffer by reason of the death of Enis Daughdrill;

b. The loss of prospective inheritance to the widow and children; and

c. Loss to the decedent's children, individually, of the value of the decedent's "nurture" during their respective minorities. (Orona v. Isbrandtsen, 204 F.Supp. 777 (S.D. N.Y., 1962); So. Pacific [Co.] v. Heavingham, 236 F.2d 406 (9th Cir., 1956); Martin v. Atlantic Coast Line R. Co., 268 F.2d 397 (5th Cir., 1959); Pet. of Marina Mercante [Nicaraguense, SA], 248 F.Supp. 15 (S.D.N.Y., 1965); and Spann v. So. Ry. Co, etc., C.A. 11023 (E.D.La., 1962), unpublished.

These items of damage cannot be computed by any mathematical formulae nor derived from precise principles susceptible of being programmed into a computer. There is little about the way this court might compute damage that each side can not with sincerity and precedent assail as being erroneous. Some courts use work expectancy, others life. Some discount at four (4%) percent, others as high as 6½%. Some use average earnings for the last three years, others only the last year's earnings. What percentage of the gross earnings would constitute a pecuniary loss to the widow and children? The answer is probably different in each case. Summarizing, the parties are entitled to the independent judgment of the individual judge in each case. We fix the damage as follows:

(1) Loss of contribution to wife and children:

|  |  |
|---|---|
| To date | $ 15,000.00 |
| Future | 86,700.00 |

(2) Funeral Expenses    1,459.20

(3) Loss of nurture and guidance:

|  |  |
|---|---|
| Sharolyn | 1,750.00 |
| Ronda | 3,125.00 |
| Shay | 5,375.00 |
| Kathy | 7,125.00 |
| TOTAL | $120,534.20 |

Counsel for plaintiff should submit appropriate judgment, interest to run from date of judicial demand.