Cecil Edgar SMITH

v.

**TEXACO INC.**

**Civ. A. No. 80–2809.**

United States District Court,
E. D. Louisiana.

Nov. 4, 1981.

H. Alva Brumfield, III, Brumfield & Brumfield, Baton Rouge, La., for plaintiff.

Robert H. Murphy, Chaffe, McCall, Phillips, Toler & Sarpy, New Orleans, La., for defendant.

## MEMORANDUM AND ORDER

JACK M. GORDON, District Judge.

The matter before the Court is a motion for summary judgment filed by Texaco Inc. ("Texaco") on the question of whether the barge known as the REDFISH is a "vessel." The plaintiff, Cecil Edgar Smith, was employed by Oil Field Maintenance Service, Inc. as a mechanic aboard Texaco's compressor barge REDFISH. Mr. Smith filed this lawsuit on July 28, 1980 under the Jones Act claiming injuries to his back while lifting a discharge valve aboard the REDFISH. On May 14, 1981 Texaco filed this motion for summary judgment claiming the plaintiff did not have seaman status, that the REDFISH was not a vessel and that plaintiff's claim had prescribed. A hearing on the motion took place on September 8, 1981, at which time the Court asked counsel to file supplemental memoranda primarily on the vessel issue, and took the matter under submission. Having reviewed the evidence, the memoranda of counsel, and the applicable law, the Court has decided to GRANT defendant's motion on the grounds that as a matter of law, the REDFISH is not a vessel.

Before discussing the jurisprudence on this issue, a general description of the structure involved in the lawsuit might be helpful. The REDFISH is a flat deck barge made out of steel and reinforced with concrete. Mounted on this barge is a compressor building which contains a power compressor engine, other associated machinery and some spare parts. This compressor system was independently fabricated and placed on the barge. The barge was filled with water from outside pumps and submerged onto a shell bed that had been dredged. Piling clusters were driven around three corners of the barge with steel cables loosely fastened to the pilings and the barge to hold it in place. The REDFISH is capable of floating and being moved, but is not self-propelled and does not have a raked bow, navigation lights or navigational equipment. It has no dining facilities or crew quarters, nor any lifeboats or lifesaving gear, and no anchors or bilge pumps. The REDFISH is immediately adjacent to the shoreline of Bateman Lake with stairs connecting it to the bank and numerous pieces of piping running between it and the shore.

With this characterization of the REDFISH in mind, the question of what is a vessel will now be discussed.

In making such a determination, the Court notes that the definition of "vessel" in the Jones Act, 46 U.S.C.A. § 688, incorporates the definition of "vessel" contained in the Shipping Act of 1916 as amended. This latter act provides as follows:

> The term "vessel" includes all water craft and other artificial contrivances of whatever description and at whatever stage of construction, whether on the

stocks or launched, which are used or are capable of being or are intended to be used as a means of transportation on water. Act of September 7, 1916, ch. 451, sec. 1, 39 Stat. 728, as amended by the Act of July 15, 1918, ch. 152, sec. 1, 40 Stat. 900, now codified as 46 U.S.Code, sec. 801.

There is no precise definition of a vessel. As Judge Wisdom stated,

> Attempts to fix unvarying meanings have [sic] a firm legal significance to such terms as "seaman," "vessel," "member of a crew" must come to grief on the facts. These terms have such a wide range of meaning under the Jones Act as interpreted in the courts, that, except in rare cases, only a jury or trier of facts can determine their application in the circumstances of a particular case. *Offshore Company v. Robison*, 266 F.2d at 779–780 (5th Cir. 1959).

The test for vessel status was discussed very early in the case of *The ROBERT PARSONS*, 191 U.S. 17, 30, 24 S.Ct. 8, 12, 48 L.Ed. 73, 78 (1903). The issue in that case was whether maritime jurisdiction attached to canal boats which were drawn by horses in the Erie Canal. The court held that such boats were vessels and asserted that:

> In fact, neither size, form, equipment, nor means of propulsion are determinative factors upon the question of jurisdiction, which regards only the purpose for which the craft was constructed, and the business in which it is engaged. 191 U.S. at p. 30, 24 S.Ct. at p. 12.

This case established the guidelines that if the structure was built as an instrument to engage in maritime commerce and navigation and was in fact utilized for that purpose then it would be a vessel.

This test seems to have been modified and expanded with respect to special purpose craft. Such structures are "unconventional vessels not usually employed as a means of transporting by water, but designed for occupations offshore and in the shallow coastal waters of the Gulf of Mexico." Norris, *The Law of Seamen*, § 669 at p. 307 (3d edition). Courts have held that

movible drilling rigs and barges and submersible drilling rigs and barges are indeed Jones Act vessels. *Offshore Co. v. Robison*, 266 F.2d 769 (5th Cir. 1959) and *Producers Drilling Co. v. Gray*, 361 F.2d 432 (5th Cir. 1966).

In *Robison, supra*, the plaintiff was working as a member of the drilling crew on a mobile drilling barge which had retractable legs that rested on the floor of the Gulf of Mexico. This *Robison* barge had a raked bow, navigation lights, anchors, bilge pumps and cranes. The barge also had lifesaving gear and six life rafts as well as living quarters and a galley. It had no engines of its own, but was moved by tugs from one well location in the Gulf to another. In finding the barge a vessel, Judge Wisdom stated that:

> The reach of the Jones Act is a peril of the sea that could hardly have been dreamt of by the landlubbers in the oil business. The Act has always been construed liberally, but recent decisions have expanded the coverage of the Jones Act to include almost any workman sustaining almost any injury while employed on almost any structure that once floated or is capable of floating on navigable waters. 266 F.2d at 771.

> \* \* \* \* \* \*

> ... under the Jones Act a vessel may mean more than a means of transport on water. Id. at p. 776.

Therefore, the court reasoned that expansion of the term "vessel" was consistent with the liberal interpretation of the Jones Act that had characterized it from the beginning.

Likewise in *Gray, supra*, a submersible drilling barge was held to be a Jones Act vessel. The barge was designed to transport drilling equipment to the well site, to submerge itself "with its own gear" for the drilling operation and to refloat for removal to a new site. The barge had a hull, navigation instruments and lights, water pumps, decking, and the usual mooring lines and stanchions found on oceangoing vessels. Other cases have held such similarly de-

scribed barges to be vessels. See *Rogers v. Gracey-Hellums Corp.*, 331 F.Supp. 1287, 1288 (E.D.La. 1971), *Daughdrill v. Diamond "M" Drilling Co.*, 305 F.Supp. 836, 839 (W.D.La. 1969) and *Guilbeau v. Falcon Seaboard Drilling Co.*, 215 F.Supp. 909, 910–911 (E.D.La. 1963).

More recently another type of special purpose craft, a submersible oil storage facility known as the Round Barge, was held to be a vessel in *Hicks v. Ocean Drilling and Exploration Co.*, 512 F.2d 817 (5th Cir. 1975). It consisted of six oil storage tanks that were submerged by flooding two tanks with a rock ballast being used to try to keep the facility at the bottom of the Gulf. It had its own galley and crew quarters. Analogous to the submersible drilling rigs, the Round Barge "was designed and constructed so that it could be raised for scraping and repair, and could be moved to another site for storage of oil. Consideration had been given to moving it to a different location in the Gulf." 512 F.2d at p. 820. The facility also was connected by flow lines and a catwalk to a fixed offshore platform, but the barge was not securely fastened to the fixed platform or the bottom of the Gulf.

The plaintiff was injured when the ballast water from one of the underwater tanks was removed causing the Round Barge to refloat on one side. On the strength of *Robison* and *Gray*, the Fifth Circuit saw no difference between the oil storage facility and a mobile drilling platform.

After analyzing these three cases, the rationale for concluding that these special purpose structures are vessels seems to be that their functions expose potential Jones Act plaintiffs to the same type of risks and hazards of the sea incident to those aboard conventional vessels. Yet even with this in mind it is the opinion of this Court that the *Hicks* case is distinguishable from the facts of our case.

The REDFISH is distinguishable from the structure in *Hicks* in that the Round Barge was equipped with ballast pumps by means of which it could raise and submerge

itself. It was also equipped with a galley and quarters for the crew, allowing men to stay aboard a facility which by its very nature was to be moved from one site to another. The REDFISH on the other hand, lacks the capacity to be submerged or refloated under its own power and must rely on outside water pumps. It has not been moved in five years and Texaco indicated they do not intend to move it. It has no crew quarters or dining facilities, no navigational gear or even a raked bow. These characteristics are indicative of the permanent, fixed nature of the REDFISH and that it is not capable of facing the perils of the sea.

Further, it is the opinion of this Court that the Fifth Circuit has not extended this special purpose craft rationale beyond the *Hicks* type vessel, but has in subsequent cases returned to and followed the *Parsons* vessel status test.

The subsequent jurisprudence bears this point out. In *Leonard v. Exxon Corporation*, 581 F.2d 522 (5th Cir. 1978) the court held that a construction platform consisting of four flat-deck barges was neither designed for navigation nor engaged in navigation at the time of the accident and, therefore, as a matter of law was not a vessel under the Jones Act. This particular platform consisted of a crane barge and three other barges which were moored to the shore by separate steel cables, but which would occasionally be untied and moved slightly until properly positioned. The court in that case was concerned with the purpose of the floating construction platform rather than its capacity for mobility.

Likewise, in *Smith v. Massman Construction Co.*, 607 F.2d 87 (5th Cir. 1979) the court followed the *Parsons* test in finding that a caisson (resembling a large topless steel box approximately 200 feet long, 84 feet wide and 20 feet high) was not a vessel. The caisson floated and carried men and equipment while it was under tow to a bridge under construction and later actually formed the base of one of the bridge's vertical columns. The court found that the caisson was built for the purpose of serving as

part of a bridge and that it was "nothing more than a floating, rectangular piece of construction material" 607 F.2d at p. 88. It had no motor power, navigation lights, navigational gear, living quarters, bilge pumps, raked bow or any of the other indications that it was to be used in navigation or commerce.

The most recent case in the Eastern District of Louisiana dealing with the vessel issue is *Mayfield v. Wall Shipyard, Inc.*, 510 F.Supp. 605 (E.D.La. 1981). Here Judge Duplantier held that a steel pontoon float which was used to facilitate the repair of ships and barges at the drydock facility was not a vessel. The court followed *Parsons* and stated that the structure's principal uses were to act as an extension of the drydock and to move material from one location to another within the shipyard. Because it was not designed for use as a vessel, the court concluded that the structure was not a vessel.

Finally, the case which the Court feels is controlling in this matter is *Blanchard v. Engine and Gas Compressor Services, Inc.*, 575 F.2d 1140 (5th Cir. 1978). In that case, as under our facts, compressor buildings were mounted on submerged steel and concrete barges. The site for the barges had been dredged out and then a shell bed was laid to strengthen the foundation. After the barges were submerged, piling clusters were driven around the corners of the barge, and steel cables were fastened to the pilings and the barges to hold them in place. Similar to the REDFISH, these submerged barges did not have raked bows, nor did they carry any navigational lights or equipment, nor did they have any crew quarters or dining facilities or bilge pumps or lifesaving gear. Judge Brown commenced his analysis with a discussion of the *Parsons* case saying, "In determining what is a vessel we consider the purpose for which the craft is constructed and the business in which it is engaged." 575 F.2d at 1142. He concluded that:

> ... the purpose and business of the compressor buildings mounted on submersible barges had nothing to do with being Jones Act vessels. It simply was cheaper to build these structures on shore and

float them into position, rather than build them on site at the West Bay Station, which was how the two buildings on pilings were constructed." 575 F.2d at 1143.

When the facts in this case are placed next to those in *Blanchard, supra*, the two cases become indistinguishable. The purpose and business of the REDFISH was to take gas at a lower pressure and compress it to a higher pressure for sales purposes. Consistent with *Blanchard* this has nothing to do with being a Jones Act vessel. The REDFISH was neither constructed for navigational purposes nor used for navigation, and even though it was capable of floating, such flotation does not automatically bestow vessel status. *See Atkins v. Greenville Shipbuilding Corporation*, 411 F.2d 279 (5th Cir. 1969); *Cook v. Belden Concrete Products, Inc.*, 472 F.2d 999, 1001 (5th Cir. 1978).

In light of all these legal directives, and on the strength of *Blanchard* as applied to the totality of the physical characteristics of the REDFISH, and considering its intended purpose and business, the Court concludes that the structure on which the plaintiff was working at the time of the accident is not a vessel.

Accordingly, IT IS HEREBY ORDERED that defendant's motion for summary judgment be GRANTED.