**Frank BUCCELLATO, Plaintiff,**

v.

**The CITY OF NEW YORK, Defendant.**

**No. CV–90–3464.**

United States District Court,
E.D. New York.

Dec. 28, 1992.

---

Vincent J. Favorito, Law Office of Steve C. Arniotes, Brooklyn, NY, for plaintiff.

Steven Levi, Asst. Corp. Counsel, Law Dept., New York City, for defendant.

## MEMORANDUM AND ORDER

GLASSER, District Judge.

Plaintiff Frank Buccellato was injured while working at a sanitation unloading facility in Staten Island. He commenced this personal injury action under the Jones Act. Defendant City of New York moves for summary judgment on the ground that plaintiff is not a seaman under the Jones Act. For the following reasons, defendant's motion is denied.

## FACTS

This case involves a fleet of barges owned by defendant City of New York. The barges are used to "transport city refuse on the navigable waters in and around the Port of New York, from certain Marine Transfer Stations (MTS) to the Marine Unloading Facility ["MUL"] located in Fresh Kills, Staten Island, New York." Pl's Memo. of Law at 2. Commercial tugs move the barges from the MTS to the MUL. The function of the MUL is to unload garbage from the barges to be deposited in a sanitation landfill and to allow unloaded barges or "light barges" to make the return trip to be reloaded at the MTS.

At the MUL a land-based crane lifts the garbage off the barges. Loaded barges or "heavy barges" are attached by boatlines to a electrical winch system and shifted along the dock for 800 feet to be positioned beneath the crane. Def's 3(g) Statement at ¶¶ 16, 19, 20. Once a barge is unloaded, a "digger gang" or "digger crew," consisting of eight members, "swings" out the unloaded barge from beneath the crane and "swings" in a loaded barge for unloading.

Plaintiff is employed by the New York City Department of Sanitation ("Sanitation Department") as a member of a digger gang. Each member of the digger gang performs different duties throughout the day under a rotation system. The general duties of the digger gang are to board loaded and unloaded barges to attach and detach their boatlines; to remove the protective netting used to prevent refuse from falling into the sea; to fight fires on the barges that are spontaneously produced by methane gas buildup; to test the seaworthiness of a light barge by sounding out its hull; to pump water out of the compartments of a light barge; and to clean up any refuse remaining in an unloaded barge. Pl's 3(g) Statement at ¶ 11(f); Def's 3(g) Statement at ¶ 26. Specifically, when a light barge is swung out and when a heavy barge is swung in, two members of the digger gang ride the light barge to handle its boatlines; two members ride the heavy barge to handle its boatlines; two members handle the boatlines from the dock; one

member operates the winch system; and a "catwalk" man "checks the boat lines, secures any loose lines and record[s] the boat numbers of the "empty" boats before his workshift started." Pl's 3(g) Statement at ¶ 11(g); Def's 3(g) Statement at ¶ 27. Since the Sanitation Department mandates that time records be kept of each shift, a supervisor records the time taken to unload a barge, to "swing" it out, to swing in a loaded barge for unloading, and the reason for any delay.

On February 5, 1990, plaintiff was injured when he slipped on oil while serving as the "catwalk" man of the digger gang. On October 9, 1990, he commenced this personal injury action, invoking federal jurisdiction under the Jones Act and general admiralty law.[1] Defendant City of New York moves for summary judgment on the ground that plaintiff is not a seaman under the Jones Act.[2] For the foregoing reasons, defendant's summary judgment motion is denied.

## DISCUSSION

 Summary judgment "shall be rendered forthwith if ... there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). In opposing a properly supported summary judgment motion, "an adverse party may not rest upon the mere allegations or denials of [its] pleading, but [its] response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). In deciding a summary judgment motion, the court need not resolve disputed issues of fact, but need only determine whether there is any genuine issue to be tried. *Eastman Mach. Co., Inc. v. United States*, 841 F.2d 469, 473 (2d Cir.1988). A genuine factual issue exists if there is sufficient evidence favoring the nonmovant such that a jury could return a verdict in its favor, *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 2510–11, 91 L.Ed.2d 202 (1986), and "[a]ll factual inferences are to be drawn in favor of the [nonmovant]." *Oxley v. City of New York*, 923 F.2d 22, 24 (2d Cir.1991).

In this case, the parties do not dispute any material facts. Plaintiff only questions the accuracy of certain daily time records of digger gang shifts from January 5, 1990 through February 5, 1990 on the ground that he has not had the opportunity to examine the superintendent who prepared those time records. Pl's 3(g) Counterstatement at ¶ 9. However, as the information contained in those time records is immaterial to the disposition of this motion, plaintiff and defendant do not dispute any of the material facts.

 Plaintiff asserts a claim under the Jones Act, 46 U.S.C.App. § 688, which provides relief to "seamen" who sustain injuries during their employment, but "under the Jones Act or general maritime law, seamen do not include land-based workers." *McDermott Int'l, Inc. v. Wilander*, 498 U.S. 337, ——, 111 S.Ct. 807, 814, 112 L.Ed.2d 866 (1991). The Longshore and Harbor Workers' Compensation Act ("LHWCA"), 33 U.S.C. § 901, *et seq.*, provides the exclusive remedy for land-based workers such as longshoremen and stevedores who unload or shift a ship's cargo. 33 U.S.C. § 905(a). The remedies afforded

---

1. This case is one of ten "related cases" involving Jones Act claims of members of other digger gangs who sustained employment-related injuries. *See* Memorandum of Robert C. Heinemann, Clerk of Court, dated October 26, 1992 (assigning the related cases to this Court pursuant to Local Rule 50.3(e)) (Exh. H to Pl's Cross-Motion).

The other nine related cases are:
*Trembone v. City of New York*, No. CV–91–5126; *Lagala v. City of New York*, No. CV–92–0424; *Zaglool v. City of New York*, No. CV–92–0426; *Confessore v. City of New York*, No. CV–92–0427; *Sorce v. City of New York*, No. CV–

92–1350; *Colon v. City of New York*, No. CV–92–1351; *Johnson v. City of New York*, No. CV–92–1352; *Diaz v. City of New York*, No. CV–92–1353; and *Sergi v. City of New York*, No. CV–92–1642.

2. Plaintiff cross-moves for summary judgment on the sole issue that this Court has jurisdiction under the Jones Act. It is clear that summary judgment cannot be granted on a specific legal issue, but that determination may be grounds for denial of the defendant's summary judgment motion.

by the Jones Act and the LHWCA are mutually exclusive. *Southwest Marine, Inc. v. Gizoni,* —— U.S. ——, ——, 112 S.Ct. 486, 492; 116 L.Ed.2d 405 (1991) (quoting *Wilander,* 498 U.S. at ——, 111 S.Ct. at 813).

■ The City argues that it is entitled to summary judgment as a matter of law because plaintiff is a land-based worker and not a seaman within the Jones Act. Plaintiff counters that whether the nature of his duties makes him a "seaman" for purposes of the Jones Act is a jury issue. Because this Court concludes that reasonable jurors, after applying the statutory standard to the evidence in the record, could reach different conclusions as to plaintiff's "seaman" status, defendant's summary judgment motion is denied.

The Jones Act provides, in relevant part, that:

> [a]ny *seaman* who shall suffer personal injury *in the course of his employment* may, at his election, maintain an action for damages at law, with the right of trial by jury....

46 U.S.C.App. § 688(a) (emphasis added).

■ While Congress did not define "seaman" in the Jones Act, the Court has held that "[t]he key to seaman status is employment-related connection to a vessel in navigation." *McDermott Int'l, Inc. v. Wilander,* 498 U.S. 337, ——, 111 S.Ct. 807, 817, 112 L.Ed.2d 866 (1991). "A necessary element of th[at] connection is that the seaman perform the work of the vessel ... [but] [i]t is not necessary that a seaman aid in the navigation or contribute to the transportation of the vessel...." *Id.* The plaintiff bears the burden of showing that he is a seaman under the Act. *Bernard v. Binnings Constr. Co.,* 741 F.2d 824, 827 (5th Cir.1984).

■ To be entitled to recovery under the Jones Act:

> the vessel must be in navigation, there must be more or less permanent connection with the ship, and the worker must be aboard naturally and primarily as an aid to navigation.

*Salgado v. M.J. Rudolph Corp.,* 514 F.2d 750, 755 (2d Cir.1975) (quoting *Klarman v. Santini,* 503 F.2d 29, 33 (2d Cir.1974) (quoting *Harney v. William M. Moore Building Corp.,* 359 F.2d 649, 654 (2d Cir. 1966)). The "aid to navigation" prong was overruled by *Wilander,* supra, because actual aid in navigation of the vessel is no longer required for recovery under the Jones Act; instead, "the employee's duties must 'contribut[e] to the function of the vessel or to the accomplishment of its mission.'" *Wilander,* 498 U.S. at ——, 111 S.Ct. at 817 (quoting *Offshore Co. v. Robison,* 266 F.2d 769, 779 (5th Cir.1959)). A Jones Act vessel includes a single vessel or an "identifiable group of vessels." *Balfer v. Mayronne Mud & Chem. Co.,* 762 F.2d 432, 434 (5th Cir.1985) (quoting *Guidry v. Continental Oil Co.,* 640 F.2d 523, 529 (5th Cir.), *cert. denied,* 454 U.S. 818, 102 S.Ct. 96, 70 L.Ed.2d 87 (1981)).

■ The determination of seaman status under the Jones Act is "a mixed question of law and fact." *Wilander,* 498 U.S. at ——, 111 S.Ct. at 818. First, the court must define "seaman" under the appropriate legal standard. *Id.* The jury then applies the facts of the particular case to determine whether that legal standard has been met. *Id.* "The inquiry into seaman status is of necessity fact-specific; it will depend on the nature of the vessel, and the employee's precise relation to it." *Id.* Where reasonable juries can differ on the plaintiff's status it is a jury question, and summary judgment is only appropriate "where the facts and the law will reasonably support only one conclusion." *Id.* (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 250–51, 106 S.Ct. 2505, 2510, 2511–12, 91 L.Ed.2d 202 (1986)).

Here, the nature of plaintiff's "seaman" versus "longshoreman" status is unclear. He neither sails ships on the open sea, nor does he unload or shift the cargo in a ship. Instead, he shifts the vessels themselves (i.e the barges) along a pier while they are moored to a dock.

Defendant City relies on many Fifth Circuit cases for the proposition that a plaintiff may only sue under the Jones Act if "[he] was assigned permanently to a vessel

... or performed a substantial part of his work on the vessel." *Balfer v. Mayronne Mud & Chem. Co.,* 762 F.2d 432, 434 (5th Cir.1985) (quoting *Offshore Co. v. Robison,* 266 F.2d 769, 779 (5th Cir.1959)). The City argues that plaintiff does not spend a substantial amount of time on the barges as only 15% of his workday is spent riding the loaded and unloaded barges, and therefore he is only a land-based maritime worker.[3]

However, it is unclear that this Circuit mandates that plaintiff have a substantial connection with a ship or group of ships. In *Salgado,* the court, quoting two earlier decisions, only required that plaintiff have a "more or less permanent connection with the ship." 514 F.2d at 755. In *Harney,* the court noted, but did not decide, that the permanent connection requirement may exclude "shore-based employees who, though regularly coming aboard, spend less than a full shift there." 359 F.2d at 654. In *Klarman,* the court noted that the permanent connection requirement has not been read strictly, but must be more than "temporary or transitory." 503 F.2d at 33 (quoting *Bullis v. Twentieth Century–Fox Film Corp.,* 474 F.2d 392, 394 (9th Cir. 1973)). Thus, the case law in this Circuit does not unequivocally require a Jones Act seaman to be substantially connected to a vessel or group of vessels as opposed to being connected to a vessel or group of vessels on a steady basis.

Furthermore, even if this Court were to apply the "substantial connection" require-

ment, the City would not be entitled to judgment as a matter of law on the present record. As plaintiff correctly points out, the 15% of the workday approximation does not include other time spent by the digger gang aboard the heavy and light barges to tie the boatlines to the heavy barges once they are delivered by commercial tug, to sound out the hull of a light barge; to fight fires aboard the barges, etc. Therefore, the present record is insufficient for summary judgment. At trial, the parties will be able to elicit the extent of time that the digger crew members spends on board the barges and the precise perils that they face in the course of their employment.

While defendant argues that members of the digger gang do not face the traditional dangers of seafarers, they are required to wear lifevests, work six days a week even in inclement weather, and are prone to injury as evidenced by the ten pending cases before this court by members of other digger gangs at sanitation unloading facilities. Drawing factual inferences in favor of plaintiff, as we must for purposes of this motion, and in light of the remedial nature of the Jones Act, this Court is drawn to conclude that a jury issue remains as to plaintiff's seaman status under the Act.[4]

 As a final note, defendant contends that an unmanned barge is not a vessel for purposes of the Jones Act. A Jones Act vessel is one which "was de-

---

**3.** Defendant City quotes *Balfer v. Mayronne Mud & Chem. Co.,* 762 F.2d 432, 434 (5th Cir.1985), in which the court held that the plaintiff was a "longshoreman and not a seaman [because] ... he never ate or slept on a vessel and had nothing to do with any vessel's navigation." Def's Reply Memo. of Law at 2. While *Wilander* certainly does away with the "navigation" requirement, 498 U.S. at ——, 111 S.Ct. at 817, defendant conveniently omits the determinative clause of the *Balfer* quotation that "[plaintiff] concedes he never went out on any vessel...." *Balfer,* 762 F.2d at 434. This case is clearly distinguishable from *Balfer* because the assigned duties of the digger gang include going aboard the light and heavy barges.

**4.** Plaintiff argues that defendant's summary judgment motion is premature because he has not yet conducted discovery in the nine related cases, and he desires to conduct additional dis-

covery in this action to ascertain whether an unmanned vessel is a Jones Act vessel and, if so, whether it loses that status by being moored to a dock. Pl's 3(g) Counterstatement at ¶¶ 12–14. Apparently, he seeks a continuance under Fed. R.Civ.P. 56(f). However, he has not included an affidavit setting forth "(1) what facts are sought and how they are to be obtained, (2) how those facts are reasonably expected to create a genuine issue of material fact, (3) what effort [he] has made to obtain them, and (4) why [he] was unsuccessful in those efforts." *Hudson River Sloop Clearwater, Inc. v. Dep't of Navy,* 891 F.2d 414, 422 (2d Cir.1989) (citing *Burlington Coat Factory Warehouse Corp. v. Esprit De Corp.,* 769 F.2d 919, 926 (2d Cir.1985)). It is also clear that the contemplated additional discovery relates to legal issues, not factual ones, and must be denied.

signed or used primarily for the transportation of cargo, equipment, or persons across navigable waters or was, at the time of [plaintiff's] injuries, engaged in navigation." *DiGiovanni v. Traylor Bros., Inc.,* 959 F.2d 1119, 1123 (1st Cir.1992) (quoting *Bernard v. Binnings Constr. Co.,* 741 F.2d 824, 829 (5th Cir.1984)), *cert. denied,* — U.S. ——, 113 S.Ct. 87, 121 L.Ed.2d 50 (1992). It is clear that the barges at issue in this case transport cargo—city refuse—along navigable waters to be deposited in the sanitation landfill in Staten Island.[5] Plaintiff, as a member of the digger gang, is involved in furthering the mission of those barges by bringing its cargo to the land-based crane for unloading.[6] Thus, a reasonable jury could conclude that plaintiff "perform[s] the work of the vessel ... [by] contribut[ing] ... to the accomplishment of its mission ...," *Wilander,* 498 U.S. at ——, 111 S.Ct. at 817, and that the Jones Act should apply to the tasks performed by digger gangs at the MUL. Accordingly, defendant's summary judgment motion is denied.

SO ORDERED.

---

**5.** The City also argues that a barge that has no motive power but must be transported by commercial tug is not a "vessel in navigation." No court in this Circuit has yet addressed that legal issue. In *Salgado v. M.J. Rudolph Corp.,* 514 F.2d 750 (2d Cir.1975), the court held that a floatable crane was a vessel for purposes of an action for breach of warranty of seaworthiness, *id.* at 755, without deciding whether it was a "vessel in navigation" for purposes of the Jones Act. Likewise, in *McSweeney v. M.J. Rudolph Corp.,* 575 F.Supp. 746 (E.D.N.Y.1983), the court declined to decide whether the same floatable crane was a "vessel in navigation" under the Jones Act. *Id.* at 748.

Other courts have pointed to the existence or non-existence of navigational lights, fog lights, bilge pumps and life-saving equipment on a vessel in determining whether it is a "vessel in navigation" under the Jones Act. *See, e.g., Smith v. Massman Constr. Co.,* 607 F.2d 87, 88–89 (5th Cir.1979) (caisson was not Jones Act vessel because it did not have "motive power, navigation lights, instruments, living quarters, bilge pumps, [and a] raked bow") (citing *Blanchard v. Engine & Gas Compressor Serv.,* 575 F.2d 1140, 1143 (5th Cir.1978); *Smith v.*

*Texaco, Inc.,* 524 F.Supp. 1313, 1315–17 (E.D.La. 1981) (collecting cases), *aff'd,* 679 F.2d 249 (5th Cir.1982). In this case, there is no evidence as to whether the barges used by the Sanitation Department possess any of those features. Thus, this Court declines to grant summary judgment on that ground on the present record. *See also Bryant v. Gates Constr. Co.,* 735 F.Supp. 602, 609–10 (D.Del.1990) (refusing to grant summary judgment as to whether barge which supported crane was vessel in navigation based on insufficient record).

**6.** In addition, if the barges are vessels under the Jones Act, they do not lose that status when tied to the dock. *See, e.g., DiGiovanni v. Traylor Bros., Inc.,* 959 F.2d 1119, 1121 (1st Cir.1992) (vessel remains a vessel even when "at anchor, berthed, or at dockside"), *cert. denied,* — U.S. ——, 113 S.Ct. 87, 121 L.Ed.2d 50 (1992); *Bernard v. Binnings Constr. Co.,* 741 F.2d 824, 832 n. 31 (5th Cir.1984) (same in dicta). *See Senko v. LaCrosse Dredging Corp.,* 352 U.S. 370, 372–73, 77 S.Ct. 415, 416–17, 1 L.Ed.2d 404 (1957) (fact that dredge was anchored and rarely in transit did not preclude finding that the plaintiff was a seaman under Jones Act).